WILLIAM SABIN v. THE VERMONT CENTRAL RAILROAD CO.

*Railroads. Railroad Commissioners, their jurisdiction. Liability of Railroad Corporations, for damage done to lands adjoining the line of their Railroad, considered.*

Where a Railroad Co. used land adjoining their railroad, for a road, while constructing their railroad, *it was held*, that it did not come within the appraisal by commissioners, and that such use, without consent of the owner, is ordinarily a mere trespass.

But the damages occasioned by laying out and making a railroad, and which commissioners are bound to estimate, include injuries which are done by railroad corporations to land adjoining the line of their road, by blasting, in a proper manner, a ledge of rocks through which the railroad passes. See *Dodge* v:. *County Commissioners*, 8 Met. 380.

And though the corporation have a right thus to throw their stones, by blasting, in a proper manner, upon adjoining lands, still, it is their duty to remove the stones thus thrown upon the adjoining lands, in a reasonable time; and if they fail so to remove them, they will be liable for the damage or injury that the owner of the land sustains in consequence of such neglect to remove them.

And for the injury sustained by the owner of the land, in consequence of the neglect of the corporation so to remove the stones thus thrown upon his land, *case* is the proper remedy, and not *trespass.*

The extent of the jurisdiction of railroad commissioners considered and discussed.

TRESPASS *quare clausum fregit.* Plea, the general issue, and trial by the court.

The plaintiff, on trial, offered evidence tending to prove that the defendants, by one Sewall F. Belknap, who had contracted to construct their railroad, commenced about the first day of March, 1846, blasting a rock in the line of the said road, and which it was necessary to blast out, in order to construct their road over it, and continued blasting said rock until it was sufficiently got out;. which was about the first day of January, 1847; that in doing said blasting, the stones were thrown by the blasts over the adjoining lands of the plaintiff, lying east of said rock, and between the line of said railroad and Connecticut river; that many of the stones so blasted out were embedded in the plaintiff's land, and that the stones so embedded were not subsequently taken away

by the defendants, and were a damage to said land. The evidence also tended to show that the defendants had subsequently taken away all of the said stones so blasted upon the plaintiff's land, except those so embedded; that the last taking away was in the spring of 1850, except a certain part which lay in the immediate vicinity of the said road; that these are still upon the land, and above the surface, covering about one-half acre of the plaintiff's land. That said Belknap, for the purpose of constructing said road, occupied, through the spring of 1846 and the season, the land of the plaintiff, for a road on both sides of the said railroad, and the plaintiff claimed damage therefor.

The defendants, in their defence, gave in evidence the following matter:

1. Their act of incorporation.

2. The location of their road.

3. A deed, from the plaintiff to the defendants, of the land taken by the defendants for the purpose of building their road thereon.

They also offered testimony, tending to prove that they let out the construction of their road, to the said Sewall F. Belknap, who by himself or agents blasted the said rock, and performed the work of constructing said railroad through and over the lands of the plaintiff; that the rock, in blasting which, the stones were thrown over and upon the land of the plaintiff, was *situated* on the land embraced in the award, in favor of the plaintiff, and against the defendants.

That the rock was nearly perpendicular, the said railroad being laid on the east side of the said rock, and over part of the same, that the stones thus blasted out were necessarily thrown over, and upon the land of the plaintiff, lying east of the said rock, which is the *locus in quo*.

The defendants also offered testimony, tending to prove that the said Belknap had settled with the plaintiff for the injury done to the plaintiff's crops, for the two seasons after the work was commenced upon plaintiff's land.

The foregoing evidence was introduced without objection, and under some agreement between the parties, that it should have the same effect, as if special pleas had been pleaded, or notice given to authorize the admission, and the court below so treated it.

On this evidence, the defendants contended that the plaintiff could not recover, and made the following objections, to wit:

1. That if any action would lie against the defendants, it should have been *trespass on the case*, and not this action.

2. That the award and payment thereof necessarily covered all claim in law, for the damage proved by the plaintiff.

3. That if it did not embrace all claim, it did for all injuries committed before the making of the award.

4. That the defendants were not liable for the trespasses complained of, but that the parties who committed the acts were alone liable.

5. That the plaintiff was not entitled to recover for any damage done, except such as was done within the period of time laid in his declaration, or else that he must be confined to a single act.

The County Court, May Term, 1852,—COLLAMER, J., presiding,—overruled the defendants' objections, and held that the defendants were liable, and rendered judgment for the plaintiff to recover of the defendants one hundred dollars for permanent damage done the plaintiff's land, by throwing the stones in blasting, which had not been taken off in 1850. Twenty dollars for injury to and loss of crops, by reason of permitting all of said stones to remain on said land through the season of 1849. And twenty dollars for damage done said land, by using the same for the road, and $16,80 interest. Said sums amounting in all to $156,80.

To all which decisions the defendants excepted.

*J. Maeck* for defendants.

I. The act of incorporation, and the location of the road over plaintiff's land, showed that the defendants were authorized by law to enter upon the plaintiff's land, and to do the acts they did do by Belknap, and that they could not be made liable as trespassers for doing them.

But it may be contended that the authority thus given by law to enter, &c., will only protect the defendants when they strictly pursue the authority thus given; that in this instance they did not, before entry, take the necessary previous measures to protect themselves, for the reason that the case shows that they did not previously agree with the plaintiff, as to the amount of his land damages, nor have a previous license to enter.

Granting all this to be true, still we contend that the exceptions disclose that a sufficient defence was proved.

The award was made on the first day of October 1846, and the payment of it on the 29th day of December of the same year. The acts complained of were committed, a part before and a part after making the award; the award and the payment of it is a justification of all acts proved after making the award, and a satisfaction of all acts proved to have been done previous thereto. All this inevitably follows, if the commissioners, in making the award, had the power to take into consideration these matters.

It is clear that the commissioners did possess the power. See the act of incorporation, section 7. If they had the power, the legal presumption is that they exercised it; if they did not exercise it, as their jurisdiction was exclusive, the party is without remedy, unless by appeal, or revising their decision.

So far, then, as damages were claimed and allowed in the court below, for any of the acts proved after the making of the award, the award and the receipt are a sufficient answer. The judgment thus far was clearly erroneous.

II. It was a matter within the jurisdiction of the commissioners; it is not shown that they did not exert their full powers. Most of the acts complained of had been done at the time. They took a view of the premises and saw the extent of the damage, and as to the extent of the injury they were the judges; and whether they have allowed too much or too little damages, is not material.

The damage allowed for the occupation of the road is susceptible of two answers. If it was necessary for the construction of the railroad, then it was damage likely to be sustained, and within the jurisdiction of the commissioners, and is settled for. It cannot be claimed, upon the ground that this must have been unforeseen at the time of making the award, for the road was in actual use then. We therefore conclude by saying, that if the acts of Mr. Belknap were wanton acts, and such as the company were not authorized under their charter to do, the company were not liable.

Secondly, That if they were such as they were authorized to do, they were within the jurisdiction of the commissioners, and settled for by the award.

The authorities below, decided upon analogous statutes, clearly

show the plaintiff is not entitled to recover.   *Lebanon* v.  *Olcott,* 1 Foster (N. H.) 339.   *Woods* v. *Wash. Man. Co.,* 4 Foster, (N.H.) 527.   *Steele* v. *Western Inland Lock Nav. Co.,* 2 Johns. 283.

The corporation, in doing this work, were in the exercise of a franchise granted them by the sovereign power; and the rule is well settled, that where they are doing no more than they were authorized by law to do, and exercise due care and skill in doing what they have a right to do, they cannot be made responsible for any damages resulting from their doing the act.

*O. P. Chandler* for plaintiff.

I. The acts of the agent, Belknap, are to be treated as the acts of the defendants, and they are answerable therefor.   The contract with Belknap was an authority to him to do all that by law, that they could have done.

II. The defendants having made use of land of the plaintiff for a road, other than that surveyed by the company, and not having had it appraised by commissioners, they are liable for that injury in this action by force of the statute.   Comp. Stat. 197, § 30.   *Baxter* v. *Vt. Cent. R. R. Co.,* 22 Vt. 365.

III. The damages complained of, and for which judgment was rendered, were not embraced in the award.   The commissioners are authorized by law, to appraise all damages the owner may have sustained, or shall be likely to sustain, by the occupation of the land taken for the purposes of the construction of the road. And any damage that would *necessarily* result by or from such occupation of the *six rods only.*   Acts of 1843, p. 46.   Welford on Railways, 197–8.   *Babcock* v. *Western Railroad Co.,* 9 Metcalf, 555.

It is clear, that in the absence of any showing to the contrary, the award only embraced such damages as would necessarily arise in such occupation of the land so taken.

The statute ought to receive a liberal construction in regard to compensation to the land owner.   Welford on Railways 64, § 67.

If that be so, then the defendants having procured no appraisal, we are entitled to sue in this action.

Even if the commissioners are supposed to have appraised such damage as the company would necessarily occasion in blasting, yet for suffering the stone to remain upon the land, no such appraisal

was made, and the defendants are trespassers *ab initio ;* and for this, trespass is the proper remedy.

The opinion of the court was delivered by

REDFIELD, Ch. J.   Perhaps the only question of any difficulty in this case, is that in regard to the jurisdiction of the commissioners appointed to estimate land damages under the defendants' charter, in respect to the appraisal of consequential damages to land not taken.   It will be noticed that the words of the act are of very great extension, in regard to the appraisal of consequential damages to all owners of land or real estate, any portion of which is taken; which is the plaintiff's case.

The owner is to have appraised to him all damages which he shall be likely to sustain by the occupation of his land for a railway.   This must include, not only all direct loss, in being deprived of the use of the land taken, but all consequential damage to the remaining lands, which may fairly and reasonably be supposed to have been within the contemplation of the commissioners in making their appraisal.

This, too, must have reference not only to the running of the road, but to all special and peculiar annoyances during the construction of the road.   But it must be, of course, the ordinary and probable consequents of such acts and operations; that which is not of the ordinary course of consequents is not to be taken into the account; and what is not to be taken into the account in making the appraisal, is not of course barred by the appraisal and payment of the damages.

The claim for the use of plaintiff's land by defendants, for a cartway during the construction of their road, would seem to come clearly without the limits of the appraisal.   The most that could be said to come fairly within the appraisal, in regard to the use of the adjoining lands, for passage during the construction of the railway, would only extend to gaining access to the land taken.   It could scarcely be claimed, that the use of the adjoining land, for a cartway, could be fairly within the contemplation of the appraisal.   It could not then be known, with any degree of practical approach towards certainty, how much material at any given point it would become necessary to bring from a distance, or at what point it would be necessary to use the adjoining land as a cartway, or whether

any such necessity would occur. And indeed, it is ordinarily supposed, that the cartways will be upon the six rods taken for the railway. And where a different course is pursued, it is ordinarily done for convenience, and not of necessity. So that such a use, without permission, is ordinarily a mere trespass. There seems, therefore, to be made out a right of recovery to this extent.

But the other portion of the plaintiff's claim seems not to come fairly, certainly not clearly, within the same general principle. And it presents a question undoubtedly of very considerable difficulty, when we are inquiring for the mere equity of a particular case. But all cases, and especially cases involving such mighty interests, and ultimately such vast consequences, in the infinity of their number and variety, must be decided upon such general principles of reasoning and justice, as commend themselves to the common mind, regardless of those trivial inequalities in detail, which no degree of finite labor or wisdom can fully prevent or equalize.

In this case, if ledges, or loose stone of considerable size, are upon the land taken for the track of the road, at the time of the appraisal, it would naturally be in the mind of the appraisers, that the stone must be removed in the course of constructing the road; and being of a character only removable ordinarily by blasting, it must occur to them, that fragments, more or less, must be thrown upon the adjoining lands, and that it would be necessary to go upon the land, to remove such fragments.

It would be the duty of the company, no doubt, to conduct this blasting in such a way as to do the least possible injury to the adjoining lands; and when, by such operation, stones were thrown without the limits of the land taken by the road, by unavoidable necessity, to remove them as soon as it could reasonably be done. And the fact, that such fragments were embedded in the soil, could make no difference. It could not be allowable for them to suffer the stone to remain thus. There is no necessity for this, but there is for throwing them, to some extent, upon the adjoining land.

It seems probable enough, from the facts detailed in the present case, that the damages sustained arose chiefly from not removing the stone in due season. But the recovery below went upon the ground, that the defendants had no right to throw the stone upon the plaintiff's land. It therefore becomes necessary to consider that question. The Massachusetts courts seem to have considered,

that for damages of this character, no action will lie, if there is no want of ordinary care on the part of the company. And no doubt, for any such want of common care, whether in conducting the operations of construction, or in not relieving a party from necessary temporary loss or inconvenience, the action should be case, and not trespass. And the party is not to be made a trespasser, *ab initio*, by mere nonfeasance. (*Stoughton* v. *Mott*, Boston Law Reporter, Oct. 1853.) Indeed, it has not been claimed that the plaintiff might maintain trespass for this injury, except upon the ground that the defendants had no right to throw the stone upon the plaintiff's land.

It seems to us very obvious, that the right of the defendants to blast these rocks, in a reasonable and prudent manner, did exist, and was conferred by the decision of the commissioners appraising the plaintiff's damages. And if we test the effect of that adjudication by the ordinary test of the extent of judgments, in merging claims, viz. that every claim is barred which was presented, or which might have been presented under the particular question before the commissioners, there will be little ground of question remaining. The plaintiff had the right to claim, and was of course bound to present his claim, for all damages he was likely to sustain, not only in the running of the road, by fires of engines, and the like, but in the building of the road, in the ordinary mode, where blasting is universal, and this not in respect of the land taken only, but of the remaining land, as has been repeatedly decided. And if this claim was not presented, when it might have been, it is barred upon general principles universally recognized, that no one shall be again called in question for what was, or what might and should have been, adjudicated.

It seems to us, that to deny the defendants the right to excavate by blasting, is to deny them the right to construct their road; and if they have the right to blast, they are no more liable, or in any different form, from what all citizens are, for the prudent conduct of their legal business, which may be attended with injurious consequences to others. If the throwing of fragments of rock is an unavoidable consequence, then so far as the owner of land taken is concerned, his probable and prospective damage as to his remaining land is to be appraised; and if he does not make such claim, or if more damage occurs than was anticipated at the time, he is

equally barred, as if his claim had been presented, or less damages had occurred than was appraised.

As we have intimated, it is clear, that for blasting at improper seasons, thereby causing unnecessary damage to crops, and for doing it in an imprudent or unskillful manner, or for not removing the stone in due time,—and that must be considered the shortest time in which it can be done, and with the least injury to the land,— the party is entitled to his remedy in the proper form. But if the defendants' charter confers the right to do the act, of which, as we have said, there can be no doubt, it seems to us impossible to allow the action of trespass for the original act, thereby treating it as unlawful. And it is too well settled, to be now brought in question, that no mere omission, or want of care or skill, in doing a lawful act, will render such act a trespass by relation.

In a late English case, (*Sharod* v. *London and Northwestern Railway Co.*, 4 Law and Equity R., 401,) it is held that a railway train being under the control of a rational agent, the company are never liable in trespass for any damages done by such train. This is undoubtedly by the general rule in relation to master and servant, unless where the master gives express command to the servant to do the act. But if that rule is to be applied to railway companies, to the fullest extent, they are never liable in trespass, for it is scarcely supposable that they would, by a corporate vote, direct an act which should prove unlawful. Certainly they would seldom do this. Most of the acts of railway companies, in their construction and operation, are done by their servants and agents, without any corporate vote. It would be absurd to conjecture for a moment, that the multifarious detail of the business of such a company came even before the board of directors. It is almost of necessity, in order to secure efficiency and dispatch, with any tolerable degree of safety, intrusted, almost without restriction, to one directing and controlling mind. All the acts then of this superintendent, and of his subordinates, which are from necessity the merest instruments, and the more so the better, as railroad men tell us, should be regarded as the acts of the company. (*The Vt. C. R. Co.* v. *Baxter*, 22 Vt. 365.)

The case of *Dodge* v. *The County Commissioners*, 3 Met. R., 380, goes to the full extent of the decision we here make, possibly further. And the Mass. statute in regard to appraisal of damages

to the owner of the land, a portion of which is taken, is the same as the statute of this State.

The result is, the judgment of the court below must be reversed, as to all the damages awarded upon this latter point; and if the party chooses to waive this portion of his claim here, the judgment for the remainder will be affirmed in this court.