The facts of this case present the question whether a railroad company is responsible for injuries done to adjoining lands, by blasting in its land for the purposes of laying its track. The injury was done to land about 200 feet from the place where the blasting occurred. There was no evidence that any part of the plaintiff's land had been taken by the railroad company under the law of eminent domain.
If this case were to be governed simply by rules derived *Page 186 
from the law of master and servant, the company would not be responsible. The person who conducted the blast in the present case, cannot be said to be the servant of the railroad company. Although, at one time in the history of the law, the other doctrine was maintained (see Bush v. Steinman, 1 B. P., 404), that case must be considered as overruled, so far as it rests upon this ground. (Blake v. Ferris, 5 N.Y., 48; Pack
v. Mayor of New York, 8 id., 222; Kelly v. Mayor of NewYork, 11 id., 432; Overton v. Freeman, 11 C.B., 867;Gayford v. Nicholls, 9 Exch., 782; Hilliard v.Richardson, 3 Gray, 349.) In these cases the inquiry was, whether the rule respondeat superior was applicable. The answer was, that under that rule as to the acts in question the relation of master and servant must exist as a condition preceding responsibility. There were certain recognized elements in that relation, prominent among which was the right to control the alleged servant in the mode of performing the work, as well as to benefit by its results. A contractor does not fulfill these conditions; if he employs subordinates, they are not servants of the original employer, but only of that person in reference to whom the ordinary conditions of the relation of master and servant exist.
While this theory is now accepted and elementary law, it must be confined to the case where liability is sought to be deduced merely from the relation of master and servant. If the person for whom the work is done is under a pre existing duty or obligation to have the work done in a particular manner, he cannot be discharged from that duty by creating between himself and another the relation of employer and contractor, and so casting upon the latter the burden of his own responsibility. He is himself bound to see that the duty is discharged. Thus, if a party enters into a contract with another to carry him to a particular place, the contract imposes upon him fixed obligations, of which he cannot divest himself by employing contractors to render the service. So if a city be bound by law to repair its streets, it cannot rid itself of its obligation by showing that a contractor was *Page 187 
employed to do the work, and that the negligence of which complaint is made is attributable to him, and not to the city or village employing him. (Storrs v. City of Utica,17 N.Y., 104.)
The present case falls within the class of cases that has just been considered. The plaintiff and defendant are each proprietors of land; as such proprietors each is bound by the rule so to use his own as not to injure another. This rule would make a proprietor liable for casting out stone upon his neighbor's land, whether by blasting or in any other manner; even though that might be necessary to enable him to prosecute his lawful business. (Hay v. Cohoes Company, 2 N.Y., 159.) This rule will be applied even though the work is done in the most careful manner. (Tremain v. Cohoes Company, id., 163.) In the former of these cases it appeared that the defendant was a canal company, and that while engaged in excavating a canal, which it was authorized by law to construct, upon land of which it claimed to be owner, it knocked down the stoop of the plaintiff's house and part of his chimney, and did other injuries. The court held that the defendant was liable in damages, notwithstanding that the work was done by a contractor (see 3 Barb., 42), observing that it could not accomplish a legal object in an unlawful manner. The same general principle is applicable where adjoining proprietors are entitled to the natural right of support. It is the duty of each toward the other to refrain from using his land so as to withdraw that support. He cannot dig, or permit contractors or others so to dig or excavate, as to withdraw that support.
It is well settled, for example, in the English courts (Rylands v. Fletcher, L.R. [3 English and Irish Appeals], 330), that it is the duty of a person who, for his own purposes, brings upon his land and keeps there any thing likely to do mischief if it escapes, to keep it there at his peril. This rule is a deduction from the maxim that each person must so use his own as not to injure another. Assume it to be sound law, could the owner discharge his duty by turning *Page 188 
over the whole business of guarding against the mischief to a contractor? Clearly not, within both reason and authority. There are certain obligations resting upon owners of land toward their neighbors, which are imposed upon them by virtue of their ownership, and are personal in their nature, and incapable of delegation. In such cases no solid distinction can be taken between an act which is a nuisance toward a neighbor and one which is a trespass upon his property. In the one case the injury is indirect, in the other it is direct. This does not affect the principle. If A. owns cattle that he keeps on his own land through the medium of a herdsman, and they trespass on the land of B., will A. be excused because his herdsman happens to be a contractor?
This subject may be regarded from another point of view. The controversy in the law books commencing with Bush v. Steinman
(supra) and continuing down to our time, has been conducted, in the main, upon the question whether the employer was liable for indirect and casual injuries occasioned to third persons by the act of an employe. The element of negligence was present, and the employer was under no duty to the person receiving the injury. The courts have, at last, with substantial conformity, reached the conclusion that in such cases the employer is not liable unless he holds the relation of master to the wrong-doer. The cases which have settled these points are not to be considered as authority where the ingredients above referred to are not present in the question. Accordingly, where the employer is under a duty to do an act in a particular way, and where the act causing the injury is not indirect and casual, but the very act which the employe was directed to do, the distinction between a servant and a contractor vanishes. The employer is, in a true sense, the cause of the wrongful act. Negligence ceases to be material. On this theory Hay v. Cohoes Company and Tremain v. CohoesCompany were correctly decided. Having established the proposition that an adjoining owner owes a duty to his neighbor, not to cast stones upon his land, whether by blasting or in any other manner, the court must necessarily *Page 189 
hold, both that the owner was liable for the act of the contractor and that carefulness or negligence had nothing to do with the case.
I do not claim, in what has been said, that the decisions in the courts have always presented the true question at issue with absolute precision and distinctness. It is only of late that all the qualifications and limitations of that which at first appeared to be a broad distinction between a servant and a contractor have been perceived. There is nothing, however, in the authorities, opposed to the views that I have presented, while no other theory is consistent with reason and justice.
The distinction thus pointed out is clearly sustained by the most recent and carefully considered English authorities. There has been, undoubtedly, a great difficulty found there in drawing the line between those cases where an employer can shift off the burden of liability for injuries done to third persons by contractors and their servants, and those where the act will be deemed to be his own, notwithstanding a contractor performs it. It is now distinctly maintained there that where an employer is under a duty or obligation to another he remains liable, though that duty is violated by a contractor without his concurrence. It is also decided that if an employer contract with a person to do a particular thing, as, for instance, to build a bridge, he is liable for injuries occasioned to third persons from the improper construction of the work. All that the cases, which discriminate between a contractor and a servant, mean is, that an employer is not liable for a collateral act of negligence by a contractor, while he is liable for such an act on the part of a servant. By a "collateral act" is meant one not directly connected with the employment, such as leaving work unguarded at night, or a pile of stones in the highway. Where, on the other hand, the injury is occasioned by the unskillful performance of the very thing which the contractor was employed to do, the act is deemed to be that of the employer on the principle of qui facit per alium facitper se, and he *Page 190 
is responsible. Reference will now be made to the facts and conclusions of some of the late authorities. In one of them, the defendants, a railway company, were authorized by an act of parliament to construct a railway bridge across a navigable river. The act provided that it should not be lawful to detain any vessel navigating the river for a longer time than sufficient to enable any carriages, animals or passengers ready to traverse to cross the bridge, and for opening it to admit such vessel. The defendants employed a contractor to construct the bridge in conformity with the provisions of the act of parliament, but before the works were completed the bridge, from some defect in its construction, could not be opened, and the plaintiff's vessel was prevented from navigating the river. Held, that the defendants were liable for the damages. Here it will be perceived that the contractor was employed to do a lawful act; it only became unlawful from his mode of performance. The bridge was not in itself a nuisance, but only became so as a result of the contractor's negligence, and the question was, whether this negligent act was the act of the employer. (Hole v. TheSittingbourne and Sheerness Railway Company, 6 Hurl. Norm., 488 [A.D. 1861].)
POLLOCK, C.B., in giving his opinion, page 497, said: "The short ground upon which my judgment proceeds is, that this case does not fall within that class of cases where the principal is exempt from responsibility because he is not the master of the person whose negligence or improper conduct has caused the mischief. This is a case in which the maxim `qui facit per aliumfacit per se' applies. Where a person is authorized by act of parliament, or bound by contract, to do particular work, he cannot avoid responsibility by contracting with another person to do that work. In Ellis v. The Sheffield Gas Consumers'Company (2 E. B., 767), Lord CAMPBELL said: It is a proposition absolutely untenable that in no case can a man be responsible for the act of a person with whom he has made a contract. I am clearly of the opinion that if the contractor does the thing *Page 191 
which he is employed to do, the employer is responsible for that thing as if he did it himself. Here the contractor was employed to make a bridge, and he did make a bridge, which obstructed the navigation. Where the act complained of is purely collateral and arises incidentally in the course of the performance of the work, the employer is not liable because he never authorized that act; the remedy is against the person who did it. That, however, generally affords but a poor compensation to the party injured, for the wrong-doer is usually a common workman. Then comes the inquiry, who is the master? The contractor? In such cases, the employer is not responsible. But when the contractor is employedto do a particular act, the doing of which produces mischief, another doctrine applies. Here the legislature empowered the company to build the bridge. In building that bridge the contractor created an obstruction to navigation, and for that the company are liable. I suggested, in the course of the argument, that where a man employs a contractor to build a house, who builds it so as to darken another person's windows, the remedy is not against the builder, but the owner of the house. It may be that the same principle applies to cases where a man is employed by another to do an act, which it is the duty of the latter to do. In such cases it is the duty of the owner of the soil to inquire what is in the course of being done, to know what is the plan, to see that the materials are good and to take care that no mischief ensues. So here it was the duty of the company to see how the contractor was about to construct the bridge. They ought to have taken care to ascertain what he was about to do, what materials he would use, and to have seen that the specification and materials were such as would ensure the construction of a proper and efficient bridge. But I do not rest my judgment on that ground, but simply on this: that there is a distinction between mischief which is collateral and that which directly results from the act which the contractor agreed and was authorized to do." WILDE, B., said, in the same case: "The distinction *Page 192 
appears to me to be, that when work is being done under a contract, if an accident happens and an injury is caused by negligence, in a matter entirely collateral to the contract, the liability turns on the question whether the relation of master and servant exists. But where the thing contracted to be done causes the mischief, and the injury can only be said to arise from the authority of the employer, because the thing contracted to be done is imperfectly performed, then the employer must be taken to have authorized the act and is responsible for it. The present defendants were authorized to take land for the purpose of their railway, and to build a bridge over the Swale. Instead of erecting the bridge themselves they employed another person to do it. What was done was done under their authority. In the course of executing their order the contractor, by doing the work imperfectly, obstructed the navigation. It is the same as if they had done it themselves. It is not distinguishable from the case where a landowner orders a person to erect a building upon his land which causes a nuisance. The person who ordered the structure to be put up is liable, and it is no answer for him to say that he ordered it to be put up in a different form." (Pp. 500, 501.)
In Pickard v. Smith (10 C.B. [N.S.], 470), the facts were, that a railway company had let to Smith (defendant) a refreshment room and coal cellar at a station. Smith had employed a coal merchant to put in coal, whose servants left the coal-hole unguarded while the coal was being put in. The hole was in the platform of the station, and was usually closed. A passenger, lawfully in the station, fell in and was injured. The court held that Smith was liable for the acts of the contractor's servants. It carefully distinguished the case from the decisions which held that an employer is not liable for the act of a contractor, as distinguished from that of a servant. The court, per WILLIAMS, J., said "that two questions must be considered: First, whether the defendant would have been liable in case he had, with hisown hands, opened the trap and afterwards negligently left it open and unguarded, whereby *Page 193 
a person lawfully using the platform was injured; if so, then, secondly, whether he is, under the circumstances of the case, absolved by reason of the leaving of the trap open and unguarded being the act of the coal merchant, who was in one sense an independent agent, as not being in the relation of servant to the defendant." The first question was readily answered by the court in the affirmative, on the principle of sic utere tuo ut alienumnon laedas. As to the second question, it was held that "the defendant was not absolved by the fact of the coal merchant being employed, and of the injury being the consequence of his immediate act. Unquestionably, no one can be made liable for an act or breach of duty unless it be traceable to himself or his servant or servants, in the course of his or their employment. Consequently, if an independent contractor is employed to do a lawful act, and in the course of the work he or his servants commit some casual act of wrong or negligence, the employer is not responsible. To this effect are many authorities referred to in the argument. That rule is, however, inapplicable to cases in which the act which occasions the injury is one which the contractor was employed to do; nor, by a parity of reasoning, to cases in which the contractor is intrusted with the performance of a duty incumbent upon his employer, and neglects its fulfillment whereby an injury is occasioned. * * * The act of opening the trap door was the act of the employer, though done through the agency of the coal merchant. And the defendant having thereby caused danger, was bound to take reasonable means to prevent mischief. The performance of this duty he omitted, andthe fact of his having intrusted it to a person who alsoneglected it, furnishes no excuse either in good sense or law." (Pp. 479, 480.)
This rule was approved in the great case of the Mersey Docks
v. Gibbs (L.R. [1 E. and I. Appls.], 93, 114, 115), and the distinction between liability for the collateral negligence of an employe and his unskillfulness in doing the very act which he was authorized to do, recognized. BLACKBURN, J., in delivering the opinion of the whole body of the common-law *Page 194 
judges, after quoting the language of WILLIAMS, J., in Pickard
v. Smith (supra), said: "Liability for collateral negligence depends entirely upon the existence of the relation of master and servant between the employer and the person actually in default. * * * In such a case as the present the liability does not depend upon that relation. Liability for doing an improper act depends upon the order given to do that thing; and the liability for an omission to do some thing depends entirely on the extent to which a duty is imposed to cause the thing to be done; and, in the last two cases, it is quite immaterial whether the actual actors are servants or not." (P. 115.)
What is meant in these cases by a collateral act, in respect to which the relation of master and servant is a prerequisite to liability, is shown by illustrations in this Mersey Docks Case.Hall v. Smith (2 Bing., 156), supplies one. A contractor employed to construct a sewer left a quantity of rubbish unguarded and unlighted by night, whereby the plaintiff was thrown down and injured. So in Duncan v. Findlater (6 Cl. 
F., 894), trustees had given directions that a drain should be filled up, and the workmen negligently left stones in the road. Such acts as these were collateral to the act of constructing and filling up the drain, and had no necessary connection with it. The owner could not be liable unless the party committing the negligent act stood in the relation of servant. (Pp. 115, 116.)
So Francis v. Cockrell (L.R. [5 Q.B.], 184), holds that where the defendants are under a duty, whether imposed by law or contract, to do work in a given way, they are liable for an injury sustained through the unskillfulness with which work is done, though a contractor be employed to perform it. To the same effect are the remarks of Lord CRANWORTH, in Rylands v.Fletcher (L.R. [3 E. and I. Appls.], 330), who holds that if a person is under the duty expressed by the maxim sic utere tuoetc., he is liable for the negligence of a contractor employed by him. The rule is well stated by WIGHTMAN, J., in Brazier *Page 195 
v. Polytechnic Institution (1 Fos. F., 507). It was there held that not only competent persons must be employed, but such persons must use proper skill and caution. This rule was approved in Francis v. Cockrell (supra, p. 196). These authorities, and the distinctions made in them, are approved in Shearman 
Redfield on Negligence (3d ed., §§ 15, 84, 175, and in notes to those sections). Hay v. Cohoes Company is recognized as sound law in the same work (§ 497, and note 1 on p. 590). In Dicey on Parties to Actions, the following rules are stated: "An employer is liable, when the damage complained of arises from the act itself which the contractor is ordered to do." And again: "The employer is liable when the contractor is intrusted with the performance of a duty incumbent upon the employer and omits to perform it." (Pp. 452, 453.)
It is now necessary to show that the present case comes, in all respects, within these rules.
The general duty of the defendant so to use its own property as not to injure a neighbor's estate has been sufficiently adverted to. It is only important to state that the contractor, among other things, was directly employed to do blasting. It was not merely a general contract to build the road. The necessity of blasting was anticipated, and it was provided for. There was a clause in the contract that care was to be taken by the contractor to avoid injuring buildings, etc., by blasting; and the special mode in which caution was to be exercised was pointed out in the contract. It further provided that all damages, caused by blasting, to buildings and other property might be paid for by the company, and deducted from amounts due the contractor. These facts plainly bring the case within the authorities cited. The following cases are also referred to: Stone v. Cheshire R.R.Co. (19 N.H., 427); Carman v. Steubenville, etc., R.R. Co. (4 Ohio St., 399); Lowell v. Boston R.R. Co. (23 Pick., 24).
Had the present case been the simple one of one adjoining proprietor bringing an action against another for injuries received from blasting, the propositions already discussed *Page 196 
would have been conclusive. The two questions of WILLIAMS, J., inPickard v. Smith (supra), must have been answered favorably to the plaintiff: 1. The defendant would have been liable if it had directly cased the stone to be thrown on the adjoining lands. 2. It was not absolved from liability because the act was done by a contractor.
There is, however, a consideration in the present case which did not exist in Hay v. Cohoes Company, or Tremain v. TheSame, which must now be adverted to. In that case the company was not proceeding, so far as the case shows, in the prosecution of a public work, under the exercise of the right of eminent domain. It was simply occupied in a work designed for its own profit, as a private proprietor might dig a trench or aqueduct. In the case at bar the company was engaged in a matter of public importance authorized by law, though intrusted to a private corporation. The land necessary for its purposes could be taken under the law of eminent domain. The people of the State were interested in the performance of the work. These facts raise a very serious inquiry. Do they not attack the very existence of the duty or obligation asserted in Hay v. Cohoes Company, or at least greatly modify the propositions there maintained?
I think that the correct rule in such a case as this, where a public enterprise of this kind is prosecuted, is that a company on general principles of law is liable in the same way as a private person; and yet if it can be made to appear affirmatively that injury to private individuals cannot be avoided, though all reasonable care has been taken, an action must fail since the public benefit must override the private injury. It is an instance of damnum absque injuria. In other words, there has been no breach of duty. The duty imposed by law upon the company has been performed. There is no right of action by the injured party. (Dodge v. County Commissioners, 3 Metc., 380; Sabin
v. Vermont Central Railway, 25 Vt., 363; Dearborn v. Boston,C. and M. Railway, 4 Foster [N.H.], 179, 187; Whitehouse v.Androscoggin Railway, 52 Me., 208; 1 Redf. Railway, 302, § 704,note 1.) *Page 197 
The remarks of SHAW, C.J., in Dodge v. County Commrs. (supra), are in point: "An authority to construct any public work carries with it an authority to use the appropriate means. An authority to make a railway is an authority to reduce the line of the road to a level, and for that purpose to make cuts, as well through ledges of rock as through banks of earth. In a remote and detached place, where due precaution can be taken to prevent danger to persons, blasting by gunpowder is a reasonable and appropriate mode of excavating such a work, and if due precautions are taken to prevent unnecessary damage, a justifiable mode. It follows that the necessary damages occasioned thereby to a dwelling-house or other building which cannot be removed out of the way of such danger, is one of the natural and unavoidable consequences of executing the work."
It might be very proper for the legislature to provide by law a mode of estimating damages which an adjoining proprietor may suffer in such a case. According to general principles of law, the railway company would not seem to be liable to an action for damages. (Sabin v. Vermont Central Railway Co., 25 Vt., 363.)
If these views are correct, the act of a railroad company in casting stones or earth upon adjoining land while engaged in blasting, is prima facie unlawful and in the nature of a nuisance within the principle of Hay v. Cohoes Company. The burden of proof is then cast upon it to show that the act was necessary, or, in other words, that the intent of the legislature that the road should be constructed could not otherwise be carried into effect, and that all due precautions were exercised. Under such circumstances it will be excused though private injury is sustained. Where there is no such necessity the company is liable. It can only justify such an extraordinary act as that of doing injury to the property of another by clearly showing that it could not otherwise exercise the powers granted to or imposed upon it by the legislature. (Dodge v. County Commissioners,supra.) Of course, if there has been compensation *Page 198 
paid for taking the land on which the railroad is constructed a different question is presented, as it may then, in some instances, under rules of local law, be claimed that the damage by blasting is included in the compensation. (Brown v.Providence Railway Co., 5 Gray, 1.)
The duty, except under the special circumstances just referred to, being thus fastened upon the railway company, it must see to its performance. It cannot substitute, for its own personal obligation, the acts of contractors. The rule is thus expressed by the common-law judges, through BLACKBURN, J., in the case already referred to (Mersey Docks v. Gibbs, L.R. [1 E. and I. App.], 112):
"If the legislature directs or authorizes the doing of a particular thing, the doing of it cannot be wrongful. If damage result from the doing of that thing, it is just and proper that compensation should be made for it, and that is generally provided for in the statutes authorizing the doing of such things. But no action lies for what is damnum sine injuria;
the remedy is to apply for compensation under the provision of the statute legalizing what would otherwise be a wrong. This, however, is the case where the thing is authorized for a public purpose or a private profit. No action will lie against a railroad company for erecting a line of railway authorized by its acts, so long as the directors pursue the authority given them, any more than it would lie against the trustees of a turnpike road for making their road under their acts, though the one road is made for the profit of the shareholders in the company and the other is not. The principle is, that the act is not wrongful, not because it is for a public purpose, but because it is authorized by the legislature. (Rex v. Pease, 4 B. Ad., 30, and other cases.) But though the legislature has authorized the execution of the works, it does not thereby exempt those authorized to make them from the obligation to use reasonable care that in making them no unnecessary damage is done. In Brine v. The GreatWestern Railway Company (2 B. S., 402), Mr. Justice CROMPTON said that the distinction is now clearly *Page 199 
established between damage from works authorized by statutes, where the party generally is to have compensation and the authority is a bar to an action, and damage by reason of the work being negligently done, as to which the owner's remedy, by way of action, remains." (Mersey Docks v. Gibbs, supra.)
In the case at bar it does not appear that the act of casting the stone upon the plaintiff's land was necessary to the prosecution of the work of constructing a railway. The testimony shows that one McCarthy commenced and finished the hole for the blast which did the greatest amount of injury. The hole was eighteen and a half feet deep and two and a half inches wide at the bottom. Ten kegs of powder were put into it. He said that half the quantity of powder was a proper quantity. He told the person managing the blast that he was putting in an overcharge. He swears that he has been engaged in blasting rocks about ten years, and that in his opinion there would have been no damage if the blast had been properly managed; he did not see any officer of the defendant oversee or inspect or direct about the work; nor was any engineer or assistant present when the blast was going on. "The rocks thrown up were very large; one big store was thrown over which broke in the whole front of the store; it took a good many men to lift it; some of the stones would weigh over two tons at the least calculation, and were thrown about 200 feet, to the (plaintiff's) store."
The injury sustained by the plaintiff, under these circumstances, gives him a valid claim against the defendant. (Turner v. Sheffield and R. Railway, 10 M. W., 425; Dodge
v. County Commissioners, supra, and other cases cited.) "A careless or negligent act, is a tort for which an action at law will lie against him who commits or him who commands it." InCarman v. Steubenville and Ind. Railway (4 Ohio [N.S.], 399), it was held that the fact that the act was done by contract was immaterial in reference to the liability of the company.
The case of Mayor etc., of New York v. Bailey (2 Den., 433), *Page 200 
holds, in substance, that where persons are invested by law with authority to execute a work involving ordinarily the exercise of the right of eminent domain and affecting the rights of third persons, they are to be held liable for the faithful execution of their powers, and cannot escape responsibility by delegating to others the power with which they have been intrusted. The decision in Brown v. Cayuga and Susquehanna Railroad Co. (12 N Y, 486), shows that the general rule is, that a railroad corporation is bound by the same obligations as an individual, to construct its works so as not to injure third persons. (Opinion of JOHNSON, J., 491.) And the same principle is applied to municipal corporations in Rochester White Lead Co. v. City ofRochester (3 Comst., 463), and Radcliff v. Mayor of Brooklyn
(4 id., 195). When the act done is in its nature wrongful, from the nature of the case, responsibility cannot be shaken off by the wrong-doer interposing between himself and the injured party the act of a contractor. (Creed v. Hartmann, 29 N.Y., 591, and opinion by SELDEN, J., p. 595.)
The cases of Blake v. Ferris (5 N.Y., 48); Pack v. Mayorof New York (8 id., 222) and Kelly v. Mayor of New York
(11 id., 432), are not opposed to these views. In Blake v. Ferris
the plaintiff had sustained damage by driving his horses and carriage into an open and unfinished sewer in the city of New York. It appeared that the defendants, with the permission of the municipal authorities, were constructing the sewer under the direction of the street commissioner, and that the work was done through the medium of a contractor, with whose performance of the work the defendants in no respect interfered. The only question was as to the correctness of the charge of the judge; in which he said that if the defendants did not contract for the work, or if the contractor was exercising an independent employment, and the defendants did not interfere with the work, they were not liable.
This charge simply raised the question whether the defendants were liable for the acts of a contractor as distinguished from a servant. It in no respect called for a decision upon *Page 201 
the point of an injury done to plaintiff's property, as in Hay
v. Cohoes Company. Pack v. Mayor of New York might, at first sight, seem to resemble the present case, but it is clearly distinguishable from it.
In that case the city of New York had employed a contractor to construct a street. This person had made a subcontract for blasting the rock. There was negligence in firing a charge of powder, whereby rocks of great weight were thrown into the second story of the plaintiff's house, doing much damage to his property, and causing serious injury to members of his family. The only question on the appeal (see page 225) was as to the correctness of the judge's charge to the following effect: that if the jury believed that the contractor employed by the defendant to do the work had been guilty of negligence in blasting, and that the injury to the plaintiff was caused by such negligence, the plaintiff was entitled to recover compensation. The court properly held that an exception to this proposition was well taken. It was the old question in Blake v. Ferris
(supra), and in Pack v. Mayor, etc.
The court could not have meant to affect the rule in Hay v.Cohoes Company, and Tremain v. The Same, as the charge of the judge referred solely to cases where liability is based onnegligence, while in those cases liability was held to be incurred wholly irrespective of negligence. The whole discussion must be referred to the special subject under consideration, which was, whether the liability of an employer for the negligence of a contractor was the same as for the like negligence on the part of a servant. The decision occurred just at the time when our courts were following the lead of the later English cases in breaking away from the old doctrine in Bush v.Steinman (supra), on the question of negligence. Moreover, it did not appear in this case that the contractor was employed to do the specific act of blasting, as in the case at bar. The presumption is that he was not, as in that case negligence is also immaterial. The act may have been unnecessary and "collateral." *Page 202 
The argument of counsel was directed solely to that point, and the attention of the court was not called to the points now under consideration. Kelly v. Mayor of New York was decided on the same general principle, though it presented an additional fact which the court held was immaterial.
The case of Water Company v. Ware (16 Wall. [U.S.], 566), is perfectly consistent with these views. In that case, a company undertook to lay down water pipes in a city, and made a special agreement with the city authorities "to be responsible for all damages which might occur by reason of the neglect of their employes. Having let out the work to a contractor, through the negligence of whose servants the plaintiff was injured, the company was held liable. Mr. Justice CLIFFORD, in laying down thegeneral rule of liability of an employer for the acts of a contractor, cites, with approbation, the case of Hole v. TheSittingbourne Railway Co. (supra, 6 Hurlst. Norman, 497), distinguishing between a direct and collateral act. In referring to the special rule as to the liability of a city for unsafe streets, he limits its liability to cases "where the work contracted to be done will necessarily, in its progress, render the street unsafe and inconvenient for public travel." This language is only applicable to the case then before the court, which was an action by one passing along a street, for injuries received by the act of a contractor putting a street in an unsafe condition. The general doctrine of the case is in full accord with the views herein presented. The same remark may be made ofButler v. Hunter (7 Hurlst. Norm., 826). In that case an architect was employed to make general repairs to a wall. He engaged a contractor to do the work. In performing it he carelessly tore down a "brest summer," which destroyed the front wall of the plaintiff's house. This case would have resembled the case at bar if the contractor had been employed to take down the "brest summer." WILDE, B., expressly distinguishes the case fromHole v. Railway Co. (supra), on that ground, saying: "There, where the act itself caused the injury, the person who ordered it was responsible; but where *Page 203 
the injury happened from something collateral in the course of carrying out the order, he is not responsible." (P. 833.) The same explanation is to be made of Reedie v. The LondonNorthwestern Railway Co. (4 Exch., 244). In that case a contractor's servant, through carelessness, while engaged in construction of railway works, allowed a brick to fall upon a person passing along a highway. The company was held not responsible. The act was plainly "collateral," in the language of the cases. Suppose that the contractor had been employed to drop bricks, with an injunction to do it carefully, would the rule have been the same? I think not. For example, if, under such a specific employment, he had conducted himself so carelessly that, while letting the bricks fall upon his employer's land he had caused them to strike upon an obstruction, so that they bounded off upon a neighbor's land, or upon a highway, and caused injury, the employer would have been responsible. (See remarks of CRESSWELL, C., in Steel v. Southeastern Railway Co., 16 Com. Bench, 553.) It is impossible to obliterate the distinction between a general mandate involving subordinate acts, and a specific order to do a particular thing. In the former case the employer does not, in general, incur responsibility for negligence in performing the subordinate acts, as the mode of performance falls within the discretion of the contractor; in the latter he is liable, as the author of the act, under the maxim,qui facit per alium facit per se.
Thus in the case at bar, where the very act of blasting, for which the defendants provided in the contract, caused the injury, who can separate between its ordinary and extraordinary consequences, or between the effect of an ordinary or extraordinary charge of gunpowder? In either case, the defendant should be liable for any injury caused by the blast to his neighbors.
The ground upon which the decision of this case is to be rested is substantially this: Railway companies, in excavating for their works, if they cast stones and earth, by blasting or otherwise, upon the lands of adjoining proprietors, are presumptively *Page 204 
liable for the injuries caused, as having committed a breach of duty imposed upon them by the general rule of law, that one must use his own property so as not to injure an adjoining proprietor. This presumption may he repelled by showing that the act of casting out the stones, etc., was necessary to the construction of their works, as authorized by the legislature, in which case the act becomes damnum absque injuria. Unless the presumption can be repelled in this manner they are liable for the consequences of the unlawful act caused by their breach of duty, and cannot shift off responsibility by showing that the act was done through the medium of a contractor. This rule is particularly applicable where the contractor is employed to do the very act which, in its results, causes such breach of duty.
It cannot be said, with reason, that the rule here laid down is too severe toward the promoters of railways. While they are exempted from liability for all injuries necessarily occasioned in the prosecution of their works, they are held responsible for those which might have been avoided. They cannot fairly complain for being required to be vigilant in protecting the rights of adjoining proprietors. A contrary decision will not only relieve them but will have a wide-reaching effect, so as to enable one proprietor of land to accomplish any work desired by him, no matter how injurious it may be to his neighbor, by going through the form of employing an irresponsible contractor. Such a rule should not receive the sanction of this court.
The order of the court below should be affirmed.
All concur with EARL, C., except DWIGHT, C., dissenting.
Order of the General Term reversed, and judgment at Circuit affirmed. *Page 205