DANIEL ENGEL, as Administrator, etc., of FREDERICA ENGEL, Deceased, Appellant, v. THE EUREKA CLUB, Respondent.

*Negligence — private nuisance — the owner of a dangerous building cannot escape liability for injuries caused by its fall, by contracting with another for its removal.*

An incorporated social club purchased an old building which was situated immediately south of the lot of one Engel, and a few months thereafter made an agreement with a contractor to remove it, including the old walls, and to erect a new building. The north wall of the old building, fourteen feet in height, thirty-three feet in length, and located wholly on the club property, was in an unsafe condition at the time of the purchase by the club. The contractor removed the roof and floors of the building, and thereby left, standing alone and unsupported by braces or shoring, the north wall, which, upon the next day, fell northwardly and killed the wife of Engel, who was in the yard of her husband's premises.

*Held,* that the wall, in view of its age, construction and condition, amounted to a private nuisance.

That as the injury to Engel's wife resulted from the wall itself, and not from the methods of the contractor in its removal, the club was liable for the damage resulting from its fall.

That it could not, by contracting with another for such removal, relieve itself from liability to a person injured by such fall.

APPEAL by the plaintiff Daniel Engel, as administrator of Frederica Engel, deceased, from a judgment, entered in the clerk's office of the county of Monroe on the 17th day of February, 1885, in favor of the defendant, after a trial at the Monroe Circuit before the court and a jury, at which a verdict was rendered in favor of the defendant.

*Martin W. Cooke,* for the appellant.

*Raines Bros.,* for the respondent.

CORLETT, J.:

The plaintiff's intestate, who lived in Rochester, was killed by the falling of a wall which belonged to the defendant, on the 16th day of June, 1882. The intestate's husband was appointed administrator and brought this action in February, 1884. Issue was

joined, the case was tried at the Monroe October Circuit before a justice and jury. It resulted in a verdict for the defendant. Judgment was entered and the plaintiff appealed to this court.

The defendant is a corporation and a social club. At the time of the accident, and for some months before, it was the owner of the premises south of and adjoining those occupied by the intestate. The defendant purchased the property for the purpose of using the same as a club-house after it should be reconstructed. Just before the accident the defendant entered into an agreement with one Wagner, a contractor and builder, for the tearing down of the old building and the erection of a new one on the site. This contract included the removal of the old walls.

The plaintiff and the deceased occupied the premises adjoining the defendant's property. The defendant's wall on the south, next the premises of the intestate, extended east and west along the line of the north side of the defendant's premises; it was fourteen feet high and thirty-three feet long. The building occupied by the deceased and the plaintiff was about ten feet from the part of the defendant's building which fronted the street.

On the day of the accident the intestate, accompanied by the plaintiff, went out and hung up clothes in their yard at a place about six feet from the wall. It fell and killed her and also her child. The deceased was twenty-six years of age.

The contractor, Wagner, had entirely removed the roof which connected the top of the wall with the main building about four o'clock the day before, and when it fell, it stood without any connection with or support from the main building, which was several feet further south. No one was working on the wall at the time of the accident. It was an eight-inch wall made of brick, resting on a stone foundation which did not come above the surface of the ground. It was necessary to remove the roof before taking down the wall.

The evidence showed that this wall was very old, and unless kept in position by the roof, unsafe and liable to fall. The contractor had been at work several days on the premises in tearing down and removing the building. The evidence shows that Wagner made no examination of the condition of the wall before removing the roof, rafters and joists which held the same in place. It was not a party-

wall, but stood on the defendant's premises. The above facts appeared on the trial.

At the close of the evidence the trial justice charged, among other things, as follows:

" There is evidence here, gentlemen, from which you would have a right to draw the conclusion that Mrs. Engel met her death on the day named, the 16th of June, 1882, without fault on her part, by reason of the carelessness of some other person or the omission of some other body of persons to extend towards her, as well as to other neighbors, that care and prudence which every owner of property owes to his neighbor.

" The question to be determined in this trial is, who is the responsible party ? The plaintiff made out a *prima facie* case when he showed that, without fault on the part of the deceased, this wall tumbled over upon her and crushed her, if he did show that as matter of proof. Showing that fact, there devolves immediately upon the defendant the duty of discharging itself from liability if it can do so by any evidence. If the defendant, by its officers and agents, had been in possession and occupation of the old Barton premises and had full control of these buildings at that time, and the wall had thus fallen upon the neighboring premises and crushed this woman, that corporation would be liable, provided the deceased committed no act of carelessness on her part which contributed to the injury.

" The defendant, however, seeks to avoid liability here, seeks to discharge itself from the responsibility which the law puts upon it as the owner of the property, by alleging and attempting to prove that, at the time of the injury, it, as a corporation, had not the custody and control of that property, but that by a contract it had turned the property over to a contractor, Mr. Wagner, who had obligated himself to remove the old building and in its place erect a new one for the benefit and advantage of this corporation.

" If that be true, if the defendant had, prior to this injury, made a contract, in good faith, with Mr. Wagner, by which the officers of the corporation surrendered to Mr. Wagner the exclusive control of that building for the purposes of demolishing it and putting another in its place, and after making the contract did no act and exercised no control over the progress of the work, the corporation

is not liable for this injury, however serious in its effects the accident may have been to the plaintiff and to the next of kin of the deceased."

At another place the learned trial justice charged: "If you shall find that Mr. Wagner agreed, either expressly or by necessary implication, to remove the old building, and he took exclusive possession for that purpose, and the officers of the corporation exercised no control over him and attempted none, there can be no recovery by the plaintiff in this action, unless you find another fact in the case, which I shall shortly bring to your attention.

"The defendant, as I have said to you, if you shall find that it had made the contract that I have named, would not be liable for any negligence on the part of Mr. Wagner, or of his employees, in the removal of the structure, during the existence of any such agreement, if Mr. Wagner, by contract clearly defined, took possession of the premises under an obligation to remove the old building and put up a new one in its place, and under circumstances that the club had not the right to interfere and control his actions, the club is not responsible for his acts of negligence or those of his employees. * * * I charge you further, gentlemen, that if you shall find that Wagner was not guilty of negligence in failing to secure this wall so that it would not fall, but that it, in fact, fell by reason of those defects, and shall say that Wagner did not know of them and could not, by the exercise of reasonable diligence, have found them out, the defendant is liable in this action. * * * I will say to you that, in the absence of any contract, that is, in the absence of any contract between the club and Wagner, such as I have named to you, the owners of the building would be responsible for the falling of the wall without regard to their knowledge of the defects which existed."

The learned counsel for the plaintiff excepted to that part of the charge which was to the effect that if the defendant had made a contract with Wagner by which defendant surrendered exclusive control for the purpose of removing the building and erecting another, that the corporation is not liable in this action. Also to the portion of the charge which was: "If you find Wagner agreed, express or implied, to take down the building, that there can be no recovery in this case."

The counsel also requested the court to charge : " If the jury find that the fall of this wall resulted from the performance of whatever Wagner agreed to do, the defendant is liable." The court refused and an exception was taken.

The counsel also asked the court to charge that : " If the jury find that the wall fell by reason of defects which existed when Wagner commenced work, the responsibility was on the owner therefor, and not on Wagner, even if he is found to have contracted as claimed, he having notice of such defects." The court refused and an exception was taken.

A request was also made to charge that : " There was no evidence from which the jury can find that Wagner was obligated to shore up the wall in question." Refused. Also, " If the jury find that the wall fell from the neglect to shore up the wall in this case, they must find the defendant liable." Also, that " in this case, one of these parties, defendant or Wagner, is liable in any event ; if it was both Wagner and defendant, jury may find under the evidence that it was the fault of both, and, if so, plaintiff may recover." These were refused and exceptions taken. There were some other exceptions to the charge and requests to charge involving, substantially, the same propositions.

In the case at bar, the defendant's contract included the taking down of the wall by the contractor, and it must be assumed that it knew the steps which it would be necessary to take to accomplish that result, such as taking off the roof, etc., and that the job would be performed in the ordinary way.

The question presented is, whether where the owner of a structure, which is so defective that it may fall by removal or tearing down, can relieve himself from liability by making a contract with another to do the work. This question is squarely presented by the charge, exceptions and requests to charge.

It is conceded that there was an existing duty resting upon the owner to prevent injury by the falling of the walls of this building. The learned trial justice so charged.

The question at bar is near the border. The charge of the learned trial justice was correct, in the absence of an existing duty or obligation. If the contract had been to build a wall or erect a building, there being no existing duty or obligation, ordinarily the owner

would not be liable for damages resulting from the negligence of the contractor or his employees. The cases cited on the part of the learned counsel for the defendant all proceed upon that theory. But, upon the conceded facts and the charge of the trial justice, the defendant would be liable, except for the contract. The question is sharply presented whether the owner of property may make an agreement, and thus relieve himself from liability, when the execution of the contract involves danger to travelers or adjoining owners.

In *Pettengill* v. *City of Yonkers* (116 N. Y., 558) it was decided that it is the duty of a municipal corporation to keep its streets in a safe condition for public travel, and it is bound to exercise reasonable diligence to accomplish that end. This is so as well where an obstruction rendering travel unsafe is caused by a third person as where it is the act of the corporation. Where, therefore, public or private improvements are being made in a city street causing an obstruction, it is the duty of the city to guard them so as to protect travelers on the street from receiving injuries therefrom. The municipality is not absolved from liability by the fact that the obstruction was caused by a contractor with the city, who by his contract is bound to properly guard it or to place warning lights. All the cases are to the same effect. (*Brusso* v. *City of Buffalo*, 90 N. Y., 679; *Storrs* v. *City of Utica*, 17 id., 104; *Turner* v. *City of Newburgh*, 109 id., 301; *Nelson* v. *Village of Canisteo*, 100 id., 89; *Russell* v. *Village of Canistota*, 98 id., 496; *Nims* v. *Mayor, etc., of Troy*, 59 id., 500; *Bauer* v. *City of Rochester*, 12 N. Y. Supp., 418.)

In *Heeg* v. *Licht* (80 N. Y., 579–582) it was held that " the rule is of universal application that while a man may prosecute such business as he chooses on his own premises, he has no right to erect and maintain a nuisance to the injury of an adjoining proprietor or of his neighbors, even in the pursuit of a lawful trade." In *Jarvis* v. *Baxter* (52 Supr. Ct. R., 109) it was held that an unsafe building was a private nuisance.

In the case at bar the wall without supports, in view of its age and mode of construction, would be confessedly unsafe and dangerous to adjoining occupants to such an extent as to amount to a private nuisance. In the condition it was when it fell it was one.

It was not contended on the trial that the contractor was guilty of any negligence in his mode of proceeding to remove the wall. In other words, it was not claimed or shown that any, except ordinary methods, were resorted to by the contractor in the removal. Under such circumstances the defendant would be liable.

The case of *McCafferty* v. *Spuyten Duyvil and Port Morris Railroad Company* (61 N. Y., 178–186) recognizes this rule. The judge writing the prevailing opinion quotes with approval the following extract from the opinion in *Butler* v. *Hunter* (7 Hurl. & N., 826): "No doubt, where the act is in itself a nuisance, the party who employs another to do it is responsible for all the consequences, for there the maxim '*qui facit per alium facit per se*' applies. But where the mischief arises not from the act itself, *but the improper mode in which it is done*, the person who ordered it is not responsible unless the relation of master and servant exists."

This question is fully discussed in the dissenting opinion of Commissioner DWIGHT (pp. 185, 186), and there is no difference of opinion between the prevailing and dissenting opinions upon the soundness of the doctrine in the above quotation.

The defendant's position was that it was the contractor's duty to ascertain the danger, if possible, and shore up the wall. When, therefore, the owner made a contract which involved the putting of the wall in the shape it was when it fell, he expressly provided for the creation of a private nuisance, and it occupied the same position as if it built the wall and allowed it to stand in the way it was at the time of falling.

If the owner or anybody else removed all the braces and fastenings, leaving the wall as it was when it fell, and the owner allowed it to stand in that condition and it fell, and an accident occurred, it would hardly be claimed that the owner was not liable. When it made a contract that the wall might be put in the condition it was in when it fell, it is difficult to see how he could protect himself from liability by the claim that the work was performed by a contractor instead of himself.

Applying the doctrine of the above cases to the one at bar, the defendant would be liable for omitting reasonable diligence in keeping the wall safe after letting the contract. It could not relieve itself from liability by devolving the duty of taking down the wall

upon the contractor, when it knew that its removal involved danger to others. It is not claimed in this case that the contractor was guilty of any affirmative act of negligence. The only ground upon which he is charged with negligence is in omitting to ascertain the defects in the wall and protect it while it was being removed. It is not alleged that it was negligence to remove the roof or take away the braces. The ground of the decisions in the street cases above cited is that a duty rested upon the city, and that it cannot relieve itself by making a contract. The application of that doctrine to the case at bar would require the exercise of reasonable care on the part of the owner in the taking down of the wall. This being so, it was not relieved from its exercise and the care incident to it by making a contract. This is precisely the position of this defendant. There was resting upon it a duty; repairs and changes were needful; it contracted with another to make them, and when the plaintiff's intestate was killed by reason of the inherent weakness of the wall, it cannot relieve itself from obligation by throwing the whole responsibility upon the contractor, insisting that when it made the contract in good faith, it was relieved from all further duty or obligation to travelers or adjoining owners.

In principle, there is no distinction between the case at bar and the city cases. The liability in both rests upon the existence of a duty which neither can relieve itself from by a contract. When one contemplates building a house or erecting some other structure, he ordinarily owes no duty to the public or individuals, except to employ a competent contractor. When, therefore, he lets the job to such contractor, he is not ordinarily liable for his negligence or that of his employees. Where, on the other hand, as in the case of public streets, an existing building or wall, a duty already exists, the party cannot relieve himself from liability by making a contract. Great mischief would flow from the adoption of such a rule.

There is no contradiction or confusion in the cases when reference is had to proper distinctions. In the case at bar the defendant owned the building and the wall. The learned trial justice states that it owed a duty, when the building was up, to travelers and adjoining owners; it lets a contract to remove the building and wall for the purpose of erecting a new structure, and then, when the wall falls, seeks to absolve itself from liability by claiming that its

·contract was a perfect protection. No case has been cited going this.length.

The question presented by the facts in the case at bar is novel. Attention has not been called to an exact adjudication upon the precise point, but the rule in analogous cases must control.

It follows that the judgment and order must be reversed and a new trial granted.

DWIGHT, P. J., concurred; MACOMBER, J., not sitting.

Judgment and order appealed from reversed and a new trial granted, with costs to abide the event.