## McCLELLAND *et al. vs.* BURNS.

(*Supreme Court Colorado, December Term, 1880—Appeal from District Court of Lake County.*)

INSTRUCTIONS—CONSTRUED AS A WHOLE. Each instruction should be considered in connection with the entire charge, and if, considering the charge and instructions as a whole, this court is satisfied the jury were not improperly advised as to any material point in the case, the judgment will not be reversed on the ground of erroneous charge.

BECK, J. Although we have considered this case on the brief of the appellants, none being filed on the part of the appellee, we are unable to discover any error in the proceedings below sufficient to reverse the judgment of the district court.

The errors complained of are that the cause was not submitted to the jury upon proper instructions.

An inspection of the record discloses the following state of facts, out of which the present case arose: On the 31st day of December, 1878, the appellee took passage on one of the appellant's coaches at Colorado Springs, for Leadville. He reached Fairplay that day, and remained there over night. Next morning he resumed his seat in a covered four-horse coach of the appellants' going to Leadville, but was ordered, by one of appellants' agents, to get out of the coach and to get into an open wagon drawn by two horses, which order he complied with.

He, with three other passengers, were taken in this vehicle through a heavy snow storm to what was known as Davidson's Half-way house, on the east side of the range, and about two miles from the summit. Here the wagon halted for dinner, and probably changed horses. After dinner the journey was resumed in a blinding snow storm, the weather also being very cold, and the driver finding the team unable to draw the wagon, with its occupants, ordered all the passengers to get out and walk up the mountain, declaring he would go no further unless they did as required. The four passengers finally got out, two of them taking hold of the rear end of the wagon, and thus allowing themselves to be dragged, or assisted along, were, in this way, enabled to keep up with the wagon. The other two were the plaintiff, Burns, and one Michael McNamara. Both appear to have been unacquainted with the route, and both swore positively that they used their best efforts to keep up with the wagon as it ascended the range, but it was an impossibility so to do. McNamara swears he only succeeded in keeping in sight of it to the first bend in the road after being ordered to get out, and that the plaintiff was then behind him. The distance from where they got out to the top of the range was somewhere from half a mile to a mile, although the passengers think it was much further. The snow was drifted in the road in many places to a depth of more than three feet, and was then drifting so badly that passengers in a four-horse sleigh of appellants, which immediately preceded the open wagon, say they could scarcely see the rear horses; and passengers in the open wagon say the hand could be scarcely seen before the face. They also say that the weather was so intensely cold that icicles formed on their eyelashes, as they groped their way through the storm, which had to be broken away every few minutes in order to see anything. In a few minutes after the wagon and sleigh passed over the road all traces of the tracks made were obliterated by the drifting snow, and the plaintiff and his comrade had frequently to search for the road, as well as to make their way up the steep ascent through the storm.

On reaching the summit they found to their dismay, that the driver had gone on with the two passengers who clung to the rear part of the wagon, and had left them to their fate.

It appears, from the testimony, that the driver waited fifteen minutes for them at the summit, before driving off.

40

They then wandered some distance down the mountain on the opposite side, but being unable to find their way with any certainty, and not knowing how far they were from any habitation, they retraced their steps and reached the Half-way house the evening of the same day. The appellee appears to have suffered severely, and to have become so bewildered in the storm that but for McNamara, who was accustomed to traveling in the mountains, would very probably have lost his way and perished. Next day they reached Leadville. The appellee claims to have been badly frozen and injured by the cold and exposure, and to have been rendered unable to work for the space of two weeks afterwards, during which time he was under the care of a physician, whose bill for treatment amounted to one hundred dollars.

The complaint charges the appellants, and their agents and servants, with negligence, and with careless and wanton disregard of their duties as carriers of passengers, in failing to provide a proper and sufficient coach, and good and sufficient horses, from Fairplay to Leadville, and in compelling plaintiff with other passengers, to ride in the open two-horse wagon; also in compelling plaintiff to walk up the mountain, and then in driving away and leaving him on its summit without any means of conveyance to Leadville or elsewhere, and without shelter from the severe storm which was raging.

The answer traverses the allegations of negligence, and charges contributory negligence on the part of the plaintiff. The trial was to a jury, who returned a verdict of five hundred dollars for the plaintiff.

Counsel for appellants think the charge of the court to the jury was misleading, and that the true rule touching negligence of the defendants, and contributory negligence of the plaintiff was not given. If this be so, it must be because defendants' counsel did not request the court below to lay down the true rule to the jury. Nine instructions were given the jury at request of defendants' counsel, and it does not appear from the record that they were in any manner qualified by the court, or that any instruction prayed in behalf of defendants was refused.

The true rule contended for, is, that the carrier, to be liable for injury to a passenger, must have been guilty of negligence, which was the proximate cause of the injury complained of; and however negligent the carrier may have been, however careless,

there is no liability unless such negligence, or such carelessness, occasioned the injury complained of.

The first instruction given on part of defendants is as follows:

"*First*—The court instructs the jury, that if the injury complained of, resulted without negligence of the defendants, or from the negligence of the defendants and the culpable negligence of the plaintiff, as above defined, combined, the plaintiff cannot recover."

It would seem that the average juror would understand from this instruction, that the plaintiff was not entitled to recover unless his injury resulted from the negligence of the defendants.

The defendants' second instruction tells the jury, that it has no right to award exemplary damages for errors of judgment, or for negligence merely, not accompanied by an apparent reckless disregard of consequences.

The third instructs the jury, that the defendants are not insurers against accident.

The fourth is as follows:

"*Fourth*—The court instructs the jury, that, in order for the plaintiff to recover in this case, it is incumbent upon him to establish:

1. That the injuries complained of by him resulted directly from the negligence of the servant of the defendants, while engaged in doing what was in the scope of his authority to do.

2. That the culpable negligence of the plaintiff did not contribute to occasion such injury; that is to say, that the plaintiff himself, did not, on the occasion complained of, omit to exercise such efforts and caution to avoid the accident and injury as a man of ordinary prudence and circumspection, placed in the same circumstances, would have exercised."

By the eighth of defendants' instructions, the jury is told, that the plaintiff must establish his case by a preponderance of evidence, and that unless he does this, the jury must find for the defendants.

It is true, that in the first and second instructions given on behalf of plaintiff, some general principles respecting the duties and liabilities of carriers were laid down, as that the law imposed upon them the utmost human care and foresight, and made them responsible for the slightest neglect; that they were bound to furnish good coaches, gentle and well-broken horses, and a pru-

dent and skillful driver, and that any defect in such preparation will make the defendants liable for injury.

But, considering each instruction in connection with all the instructions given, we do not think the apprehensions of counsel, that the jury may have been misled as to the law, are well founded.

The rule established by this court, is, that in construing a charge, each instruction is to be considered in connection with the entire charge, and, if considering it as a whole, this court is satisfied that the jury was not improperly advised as to any material point in the case, the judgment will not be reversed on the ground of an erroneous charge. *Union Gold Mining Co.* v. *Rocky Mt. Nat. Bank*, 2 Colo., 565; *Thatcher et al.* v. *Rockwell*, 4 Colo., 375.

And when we look into the evidence, and note the reckless and inhuman conduct of the driver of the wagon in deserting the plaintiff to his fate in that wild storm, and upon that bleak mountain, after requiring him to make his way on foot through the snow, to its summit, there is little reason to apprehend that the jury may have based its verdict upon acts of negligence, of appellants or their servant, which were not the proximate cause of the injury complained of.

We are of the opinion the judgment should be affirmed.

*Judgment affirmed.*

CHIEF JUSTICE ELBERT being absent, did not participate in this decision.

*Hughes & Welborn*, for appellants.