## DENVER CITY IRRIGATION & WATER CO. v. MIDDAUGH.

1. EMINENT DOMAIN — DAMAGES — RES ADJUDICATA.— In condemnation proceedings under the statute in county courts, such courts are without jurisdiction when the amount of the award is in excess of $2,000.

2. VOID JUDGMENT — ESTOPPEL.— A party accepting and retaining the fruits of a void judgment is estopped from assailing the judgment itself.

3. And as to him such a judgment has the same force and effect as a valid judgment.

4. JUDGMENT — CONCLUSIVE WHEN.— A judgment is conclusive between the parties not only as to such matters as were in fact determined in the proceeding, but as to every other matter which the parties might have litigated as incident to or essentially connected with the subject-matter of the litigation, whether the same, as a matter of fact, were or were not considered.

5. CONDEMNATION PROCEEDINGS — DAMAGES.— In condemnation proceedings all damages, present and prospective, that are the natural, necessary or reasonable incident of the improvement must be assessed, not including such as may arise from negligent or unskilful construction or use thereof.

6. ASSESSING DAMAGES FOR CANAL OR RESERVOIR.— In assessing damages for lands taken for the construction of a canal or reservoir thereon, injuries to the residue of such lands arising from seepage and leakage from such canal and reservoir should be anticipated, and damages for the same should be included in the original assessment; and no subsequent recovery for such injuries will be allowed unless such negligence or unskilfulness be shown.

7. Damages for Trespasses or Nuisances.— For trespasses or nuisances that are not of a permanent character damages can only be recovered for the injury sustained up to the time of the commencement of the suit; but as to trespasses and nuisances that are of a permanent character a single recovery may be had for the whole damage resulting from the act.

*Appeal from District Court of Arapahoe County.*

It appears from the undisputed statements of the pleadings that the defendant, being appellant here, in the years 1878 and 1879 constructed a canal extending from the Platte river to its water-works, and in February, 1879, it commenced proceedings in the county court of Arapahoe county to condemn a right of way through, across and over certain lands of the plaintiff for the construction of certain canals, lakes and reservoirs, which lands were a part of the lands of the plaintiff described in the complaint, and for the alleged injury to which this action was brought to recover damages. Said proceedings in the county court resulted in the condemnation of sixteen and eighty one-hundredths acres of plaintiff's land, for which plaintiff was awarded the sum of $2,163.75, and he was awarded the further sum of $1,500 for damages to that portion of his said lands not taken, which said sums so awarded to the plaintiff he received and accepted. The plaintiff alleges, and the defendant denies, that the construction of its canal and reservoir by the defendant on lands adjacent to the plaintiff's lands was so negligently and unskilfully done that water percolated, penetrated and run through the banks and bottom thereof, over, under and through and upon the plaintiff's lands, by reason whereof the plaintiff has been greatly damaged. The defendant alleges, and the plaintiff denies, that the damages of which plaintiff complains are the identical damages involved and in issue in the said condemnation proceedings, and are none other or different, and that the proceedings and judgment of the county court, with the payment of the amount of such judg-

ment, are a full satisfaction and bar to the present action. A trial to a jury resulted in the following verdict: "We, the jury, upon the issues herein joined, find for the plaintiff, and assess the damages by occasion of the premises in the complaint specified at the sum of $3,500." Judgment was thereafter entered upon the verdict, and the case brought here by appeal. The remaining facts sufficiently appear in the opinion of the court.

Messrs. DECKER & YONLEY and GEO. H. KOHN, for appellant.

Messrs. PATTERSON & THOMAS, for appellee.

MR. JUSTICE HAYT delivered the opinion of the court.

The county court was without jurisdiction in the condemnation proceedings, the amount of award being in excess of $2,000. *Railroad Co. v. Church*, 7 Colo. 143; *Railway Co. v. Otis*, 7 Colo. 198. A decision had not, however, been rendered in either of the cases cited at the time of the trial in the county court, and the parties to the condemnation proceedings treated the same as valid, the appellant paying and the appellee accepting the amount of the judgment awarded by that court. The appellant shortly thereafter entered into the possession of the lands condemned, and has since occupied the same, with its ditch and reservoir. Under these circumstances it becomes necessary to determine the *status* of the party under such void proceedings. It is a familiar principle of the law that a party accepting and retaining the fruits of a void judgment is estopped from assailing the judgment itself. *Kile v. Town of Yellowhead*, 80 Ill. 208; *Town v. Town of Blackberry*, 29 Ill. 137; *Felch v. Gilman*, 22 Vt. 39; *Embury v. Conner*, 3 N. Y. 511; *Hitchcock v. Railroad Co.* 25 Conn. 516. In none of the cases cited, however, did it become necessary to determine the effect of receiving the benefits of a judgment void for the want

of jurisdiction in the court over the subject-matter of the suit, although the language used in some of the opinions is broad enough to cover such cases. In the case at bar the court below, in some of the instructions given to the jury, seems to have drawn a distinction between the case of a party accepting the fruits of a judgment rendered by a court without jurisdiction of the subject-matter and a case in which the party has received the fruits of a judgment voidable for the want of jurisdiction over the person, or on account of some informality occurring in the proceedings antecedent to judgment; but this theory is expressly waived by counsel for appellee in their argument filed in this court, and after diligent search I have been unable to find any authority in support of the theory of the trial court. Nothing in the testimony indicates that at the time the appellant paid and the appellee received the amount of the judgment of the county court either party entertained a suspicion of the invalidity of such judgment, and under these circumstances we must presume that both parties were acting in good faith under the belief that the proceedings in that court were valid and binding, and that the judgment there rendered had all the force and effect of a valid judgment, and that the money was paid and the land taken with this understanding. And as appellee, after the notice of the invalidity of such proceeding, continued to retain the money so paid, I am of the opinion that he is estopped from denying the validity of such judgment, and that he should be held bound by that adjudication the same as he would have been had the court had complete jurisdiction, and that for the purposes of this action the same should be treated in all respects as a valid judgment. See *Kile v. Town of Yellowhead* and other cases cited *supra*.

It appears from the testimony adduced upon the trial in the district court that a large number of witnesses were examined in the condemnation proceedings in ref-

erence to the damages that would probably result to appellee's land by reason of seepage and leakage of water from the ditch and reservoir; and under the instructions of the county court the jury were permitted to consider and allow for such damages in that proceeding if they saw proper, but it does not affirmatively appear that such elements of damage were in fact allowed. One juror, sworn as a witness upon the trial in the district court, testified that damages for seepage and leakage were not allowed; other jurors testifying that such matters were taken into consideration by the jury, but could not state whether any damages were allowed for the same or not. Under such circumstances I think it would be very difficult to say just what consideration influenced the mind of each juror in the condemnation proceeding in arriving at the conclusion that the sum of $1,500 should be allowed the appellee as proper compensation for the damages to result to the balance of his land; but, if the judgment of the county court is to be treated as valid, the consideration of this question is not material, for a valid judgment is conclusive between the parties, not only as to such matters as were in fact determined in that proceeding, but as to every other matter which the parties might have litigated·as incident to, or essentially connected with, the subject-matter of the litigation, whether the same as a matter of fact were or were not considered. Freem. Judgm. § 249; *Sabin v. Railroad Co.* 25 Vt. 363. This principle was recognized by the learned judge in the trial below, in the instructions to the·jury, upon defendant's plea of *res judicata;* for, after telling the jury that the plaintiff could not recover for the damages in fact allowed by the jury in the county court, they were also instructed that the law presumed that all past, present and future damages which the improvement would cause, so far as the same might have been reasonably foreseen or anticipated, were included in the award of the jury in the condemnation proceedings. Under these

and other instructions the jury were left, however, to determine whether the damages claimed might have been reasonably foreseen or anticipated by the jury in the condemnation proceeding, and, if not, they were instructed that the appellee might recover for such damages in this action as well as for damages arising from unskilful or negligent construction or use of the ditch or reservoir, and this is assigned for error.

Upon my first examination of this case I was of the opinion, in opposition to the views of the Chief Justice, that there was no error in these instructions; but upon reflection, and after an examination of the authorities, I have concluded that my first impressions were erroneous, and that the rule in reference to the conclusiveness of condemnation proceedings under statutes similar to our own, which is supported by the better considerations and recognized by the strong weight of judicial authority, requires us to hold that damages resulting from seepage and leakage from the ditch and reservoir, not resulting from negligent or unskilful construction or use thereof, ought to have been foreseen and allowed in the condemnation proceedings, consequently are not recoverable in this action, no matter whether such damages were, as a matter of fact, allowed or not. It is provided by our statute that in condemnation proceedings the owner or parties interested in the real estate taken shall be awarded damages, not only for the land or property taken, but also the damages, if any, resulting to the residue of such land or property. The reported cases under similar statutes have generally treated of the damages recoverable for the seizure of land under the right of eminent domain, for railroad or highway purposes; and, so far as I have investigated the decisions, I find the general current of authority to be that all the damages, present and prospective, that are the natural, necessary or reasonable incident of the improvement, must be assessed in the condemnation proceedings, not including such as may

arise from negligent or unskilful construction or use thereof. Mills, Em. Dom. § 216; *Sabin v. Railway Co. supra; Aldrich v. Railway Co.* 21 N. H. 359; *Railway Co. v. Hopkins,* 90 Ill. 316; *Sawyer v. Keene,* 47 N. H. 173; *Van Schoick v. Canal Co.* 20 N. J. Law, 249.

An examination of the reported cases shows that there is no substantial difference in the general rules applicable to the assessment of damages in condemnation proceedings, as announced by the courts of last resort, but in the application of such rules to particular cases the same uniformity has not been observed; still no case has been called to our attention which by any fair construction can be held to be in conflict with the conclusion that damages for seepage and leakage should have been determined in the first proceeding. In *Sabin v. Railroad Co.* 25 Vt. 363, plaintiff was allowed to recover for injuries arising from the making and use, in constructing its railroad, of an ordinary cartage road upon plaintiff's adjoining land by the railroad company. In the case of *Railway Co. v. Magruder,* 34 Md. 79, the facts were that the right of way for a railroad had been condemned through the farm of M., and in the course of the construction of the railroad the channel of a natural stream was changed by the company so as to divide the water from the rest of the farm. For the damages occasioned by such diversion, M.'s action to recover was sustained. Neither the construction of a wagon road over the land not taken nor the diversion of a natural stream from its course is a natural, necessary or reasonable incident of the improvement. In *Railway Co. v. Gilleland,* 56 Pa. St. 445, and in *Railroad Co. v. Daniel,* 20 Grat. 349, the specific injuries complained of resulted from the failure to exercise proper care in the construction of the railroads; and in many of the other cases cited by counsel for appellee the injuries for which a recovery was sustained clearly resulted from negligence in the construction of the improvement. On the contrary, it has been

decided that the owner, for the purpose of determining the decrease in the value of the premises resulting from the improvement, is entitled to have the jury consider such remote contingencies as the liability to fires and to the frightening of horses from passing trains (Wisconsin); increased inconvenience in the use of the remainder, and annoyance likely to be caused by the smoke and noise of passing trains (New York); liability to loss of the use of a spring by having subterranean water channels cut off (New Hampshire); increased liability to overflow of water resulting from the construction of a canal (Maryland); and damages arising from seepage and leakage from a canal (New Jersey). *Blesch v. Railroad Co.* 48 Wis. 168; *In re Railroad Co.* 56 Barb. 456; *Aldrich v. Railway Co.* 21 N. H. 359; *Canal Co. v. Grove*, 11 Gill & J. 398; *Van Schoick v. Canal Co. supra.* The decisions cited are valuable for the purpose of showing the extent to which the courts have gone in order that the entire damages may be assessed in one proceeding.

In assessing damages in condemnation proceedings for lands taken for the purpose of constructing a ditch or reservoir thereon, injuries likely to result from seepage and leakage from such canal or reservoir would naturally be among the first items to occur to a jury. And we are not without direct authority in support of the proposition that, if damages for such injuries are not allowed in the original action, no subsequent recovery for such injuries can be had. In the case of *Canal Co. v. Grove, supra,* the court held that, in estimating the value of the land taken for the use of the canal company, the jury of inquest should have allowed for the increased danger of overflow to the lands not taken, and that the owner could not thereafter recover for damages arising from an overflow of his lands resulting from the construction of the canal in the absence of negligence. In the New Jersey cases cited *supra*, under a statute requiring the jury in a condemnation proceeding "to assess

the value of land and the damages sustained," the following questions were presented in a suit brought subsequent to the first assessment: "*First.* Whether the plaintiff was entitled by law to have his damages assessed by the former jury for the injury to his crops and land from leakage of the canal, for the loss of his road and the carrying away his soil by the reflow of the waters occasioned by the canal embankment. *Secondly.* If he was entitled by law to have his damages so assessed, whether, if he omitted to claim or prove such damages before that jury, or was prevented from doing so by the court, he can maintain another and distinct action for their recovery." It will be seen by these questions that the facts were very similar to those here presented, and in that case the court said: "I believe that the legislature intended that the award of the commissioners, or, in case that should be set aside, the verdict of the jury, followed by the judgment of the court, should be final and conclusive between the parties, both as to the value of the land and the damages sustained. And I do not believe that they ever designed that, after such proceedings, the company could be subjected, from time to time, during the whole period of its existence, to an action at law by every landholder on the line of the canal, to recover damages for some injury which he may allege was not foreseen, and for which subsequently he was not compensated. Such a construction would have been a most effectual bar to the enterprise of erecting a canal; for no man would have embarked his capital in a work the cost of which could never be ascertained till the charter expired. It may be said that it operates injuriously to an owner who sustains damages from a cause which neither the commissioners nor jury by the utmost human sagacity could see or provide against; but the defendants might urge the same objection, that they were liable to be assessed for anticipated injuries which may never occur. Entertaining this view of the ques-

tion, I  *  *  *  am of opinion that the plaintiff was legally entitled to an assessment by the commissioners and former jury for all the injuries which are the subject of complaint in this action.   This brings me to the second question,— whether, having omitted to do so, or having been prevented by the court from doing so, he can now maintain this action.   Believing that the statute provided a remedy for the injuries complained of in this action, I consider the plaintiff as confined to that mode of relief, and barred from an action at common law.   It is no answer to say that he was deprived of his remedy under the statute by the act of the court.   If the court committed an error the plaintiff should have sought to have it corrected by a motion for a new trial." It is said that the rule requiring injuries resulting from seepage and leakage to be anticipated and damages for the same allowed in the condemnation proceedings will work hardship in some cases; but, while this is doubtless true, it is believed that mischief is less likely to result under such a rule than from any decision under which the owner of the improvement might be subjected to repeated suits for injuries, which the owner of the land might think were occasioned by seepage which was unforeseen at the time of the condemnation proceedings; and I am of the opinion that it is much wiser in the case at bar and similar cases to say that such injuries should be included in the original assessment.   It follows that appellee should have been limited in his recovery to such injuries as resulted from negligence or want of care in the construction of appellant's ditch and reservoir, or in the subsequent use of the same; and it was error to permit the jury to consider and allow damages for seepage and leakage not resulting from such negligence or want of care.

The remaining questions raised by the assignment of errors are not such as are likely to arise upon a retrial of the case; and I shall not consider the same further than

to say upon the question of damages that, as to trespasses and nuisances that are not of a permanent character, damages can only be recovered for the injury sustained up to the time of the commencement of the suit, but as to trespasses and nuisances that are of a permanent character, a single recovery may be had for the whole damage resulting from the act. *City of Denver v. Bayer*, 7 Colo. 127. If these general rules are observed I do not apprehend that any difficulty will arise upon this question upon a retrial of the case. The judgment must be reversed and the cause remanded.

*Reversed.*

ELLIOTT, J. (*dissenting*). Having presided at the trial of this case in the district court, it has been with great reluctance that I have consented to participate in the review of it in this court. But the circumstances attending the case in this court have been peculiar. The honorable commissioners first considered the case and reported a unanimous opinion affirming the judgment, though upon grounds somewhat different from those announced in this opinion. Upon my accession to the bench, finding the judges divided in opinion in respect to the case, I waited for my Brother HAYT to qualify, hoping he and Chief Justice HELM would be able to decide the case without my intervention. But after patient consideration, they, being unable to agree, have insisted that it is my duty to sit in the case, else the decision might be deferred to the close of my term. Accordingly I have undertaken a re-examination of the case, animated only by a desire to reach a conclusion according to correct legal principles, and impressed with the conviction that the controlling consideration should be, not so much the result in the particular case, as the announcement of correct rules, so far as we are required by the record to announce any at all.

The evidence on the trial was conflicting as to the in-

jury to plaintiff's land caused by water, both as to the
origin and extent of the inundation, and as to the value
of the land with or without the presence of the surplus
water, and also as to the alleged negligence of the de-
fendant in the construction of the canal and reservoir.
There was not much conflict as to what elements of
damage were in fact allowed by the county court jury in
making their award of $1,500.   One juror testified that
they did not allow plaintiff any damages on account of
any seepage which might occur; that the representative
of the defendant company who went with them to view
the premises assured them that he would puddle the lake
so that no water should escape, and that, if there should
be any injury caused by seepage, plaintiff could have his
action in court therefor.   Another juror testified that he
thought there was some damage taken into consideration
by reason of the seepage from the lake, but could not
state whether any damages were allowed upon that
ground.   The county judge testified to visiting the prem-
ises with the jury in company with plaintiff and the rep-
resentative of the defendant company.   He corroborated
the juror in reference to the assurance given that the
lake should be so constructed that there would be no
seepage.   He also testified that the question of injury to
plaintiff's land by seepage from the lake was considered,
but of course he could not state what elements of dam-
ages were actually allowed.   The instructions to the
county court jury were admitted in evidence on the trial
in the district court on the ground, as the court remarked,
of "having a tendency to show what in all reasonable
probability the jury took into consideration in awarding
the verdict.   The transaction in the county court is prac-
tically matter *in pais*, because the court was without
jurisdiction."

In submitting the case to the jury in the district court
the nature of the case, together with the claims and de-
fenses of the respective parties, were set forth at consid-

erable length. That portion of the charge to which the assignments of error principally relate is, in substance, as follows: That the plaintiff claimed nothing on account of the land taken for the lake, nor any damages to the residue of his land, except on the ground that since the construction of the lake and the turning of the water therein there had been seepage through the embankments or bottom thereof, saturating and flooding his land, and so injuring and depreciating its value for any useful purpose to which it might be put. That the condemnation proceedings in the county court were as matter of law null and void; and that, in determining whether or not plaintiff had received any compensation from defendant for damages occasioned by such seepage, the jury were to consider the condemnation proceedings the same as other facts showing or tending to show whether or not plaintiff received such compensation. That plaintiff, having accepted the amount awarded by the county court jury, could not recover in this action, unless there had been injuries to plaintiff's land resulting from seepage from the lake which were unforeseen, and which were not and could not be fairly anticipated or estimated at the time of the trial in the county court. That plaintiff could not accept the fruits of a judgment, and then deny its force and validity as to everything fairly included in the litigation. That the legal presumption is that the jury and the parties considered in their assessment of damages in the county court all damages which would result from the construction and the use of Lake Archer, such as the impairment of the value of the property remaining on account of the taking of a part of it, inconvenience of access, from embankments, ditches or cuts, and also from leakage from the canal or lake, so far as the same could be reasonably foreseen, anticipated or estimated; but not damages which might result from negligence or unskilful construction of the work. That if defendant constructed the lake so that the water, when

turned therein, seeped or leaked through the banks or bottom thereof, and ran through and upon the plaintiff's land, thus saturating and overflowing the same, causing injury thereto, then plaintiff was entitled to recover the damages occasioned by such seepage or leakage, unless the $1,500 paid by defendant in pursuance of the proceedings in the county court included the damages occasioned by such seepage or leakage, and was accepted by plaintiff in settlement and satisfaction thereof. That if said $1,500 did include, and was so paid and accepted in settlement and satisfaction of, said damages, then it was a settlement and payment once for all; and that plaintiff could not recover, even though the sum so paid was not sufficient to include and cover said damages. The amount involved in the condemnation proceedings in the county court being in excess of $2,000, that court was without jurisdiction over the subject-matter of the litigation, and the record and judgment in the case as a matter of law were of no validity whatever. This question has been expressly decided by this court, though at the time of the condemnation trial in the county court, and at the time of the commencement of this action in the district court, the decision had not been rendered. *Railway Co. v. Church,* 7 Colo. 143; *Railway Co. v. Otis,* 7 Colo. 198. Thus, the second defense of the answer considered as a plea of *res judicata* was not sufficient. Such a plea, to be effective, must be supported by the judgment of a court of competent jurisdiction — the judgment must be a valid one. Freem. Judgm. § 252; Wells, Res. Adj. § 422; Bigelow, Estop. 20, 21; *Wixom v. Stephens,* 17 Mich. 518.

Notwithstanding the record and judgment of the county court were void as a matter of law, yet, inasmuch as the defendant paid and the plaintiff accepted the amount awarded by the jury, the transaction became binding as a matter of fact as to everything actually included in the award. It was as though defendant had, upon a private

negotiation with the plaintiff, bought and paid for the lands actually taken for the construction of Lake Archer, and had settled and paid the damages which the parties actually decided would result to the residue of plaintiff's lands by reason of the construction and use of said lake. The fact that the parties accomplished this negotiation through the intervention of a so-called judge and jury neither enlarged nor diminished the scope or effect of the transaction.   The whole proceeding was *coram non judice*, and though in form made matter of record was in fact only matter *in pais*.   Had the judge and jury only assumed to act in the capacity of private individuals in negotiating a settlement of the controversy between the parties, their counsel and advice as to the terms of the settlement would have been just as potent as their so-called verdict and judgment.   Hence, the conduct of the parties is not to be tested by the principles of *res judicata* applicable to proceedings and judgments of a court of competent jurisdiction.   We are not called upon to determine, necessarily, what might have been the effect of a judgment in such a proceeding as a matter of law had the same been obtained before a court having jurisdiction over the subject-matter as well as over the parties, but what as a matter of fact was decided by the parties.   What controversy did the parties negotiate and settle?   What elements of damages were included in the award, and what, if any, were omitted?   The parties were not bound by those salutary rules of law so jealously enforced by the courts as a matter of public policy for putting an end to litigation, whereby it is held that, legal proceedings having been instituted before a court of competent jurisdiction for the settlement of a controversy between individuals, they shall upon the trial thereof be bound, not merely by what was tried and determined, but by everything fairly embraced in the issues which might have been tried and determined.   The parties in the county court, though acting under the forms

of law, were nevertheless free to accept or reject the re-
sults of the trial. In accepting it they were concluded
simply by what they understood as a matter of fact they
were settling, as in case of a private contract. If, as a
matter of fact, the defendant's agent or any other person
induced the jury to disregard the injury which might
result from seepage, so that they did not take that ele-
ment of damage into account, but expressly left it out
of their calculation, with the understanding that plaintiff
might bring his action for it if such injury should ulti-
mately ensue, then in this action the district court was
right in declaring the liability of the defendant upon the
precise ground which it had thus voluntarily chosen.
The condemnation proceeding in the county court was a
nullity, except so far as the parties gave vitality thereto
by their subsequent conduct; and then it took effect, not
as a judgment, but as evidence of a simple contract exe-
cuted between the parties. 2 Phil. Ev. 35, 136, 137, and
notes; *Wood v. Jackson,* 8 Wend. 10; *Hawley v. Har-
rall,* 19 Conn. 152. A judgment voidable for want of
jurisdiction over the person may perhaps become effect-
ive by the laches, acquiescence, acceptance or other like
conduct of the party otherwise entitled to impeach it.
But when it affirmatively appears of record that a court
assuming to pronounce a judgment has no jurisdiction
whatever over the subject-matter thereof, no subsequent
conduct of the parties can give force or validity to such
proceeding as a judgment. They may make the so-
called judgment the basis of a contract between them,
and so affect property rights and rights of action speci-
fied therein; but it is nevertheless only a contract, or the
evidence of a contract, and subject to all the incidents
of a contract. It does not partake of the nature or inci-
dents of a judgment. Freem. Judgm. secs. 116–120;
*Gilliland v. Sellers,* 2 Ohio St. 223; *Bowie v. Findly,* 55
Ga. 604; *Wamsley v. Robinson,* 28 La. Ann. 793. Hence,
when such void proceedings are relied on for any pur-

pose, they are subject to the same rules of evidence as private writings; and parol evidence may be resorted to, not only to show what was the subsequent conduct of the parties in reference to such void proceedings, but to supplement the record itself, as a private writing, when it is incomplete or contains any latent ambiguity; also to explain general recitals of fact, as well as to show and identify the subject-matter and circumstances of the transaction. 1 Greenl. Ev. sec. 275 *et seq.;* 2 Phil. Ev. 718, and notes. The petition, verdict, judgment and receipt of the plaintiff, produced in evidence from the records of the county court in said condemnation proceedings, speak of damages to plaintiff's land, but do not specify or identify any particular element of such damages,— none of these writings refer to damage from seepage or from any other particular cause. Under such circumstances it was undoubtedly competent to show by parol what particular damages were thus considered, decided upon, paid for and accepted. This may often be done, even when a valid judgment is relied upon as a bar to a second suit; *a fortiori* if the so-called judgment be absolutely void. *Parker v. Thompson*, 3 Pick. 429; *Cist v. Zeigler*, 16 Serg. & R. 285; 2 Phil. Ev. 19.

Leaving out of consideration the question of negligent construction, about which no question of law has been presented, it will be observed that by the instructions given in the district court the plaintiff's right to recover was made to depend upon two conditions: *First*, that the $1,500 accepted by him did not include the damages sued for; *second*, that the damages sued for were unforeseen, and could not be fairly anticipated or estimated at the time of the trial in the county court. Whether or not in the construction of canals or reservoirs injury by seepage to adjoining lands not taken is to be considered an element of damage which the improvement may reasonably be expected to produce as an ordinary and probable consequence is a most difficult and vexatious ques-

tion; but, according to the view taken by this opinion, it is unnecessary to decide such question in the present action. For if the $1,500 was not, as a matter of fact, paid by defendant nor accepted by plaintiff as a settlement and satisfaction for any damage that might result from seepage from defendant's lake, then the plaintiff, if he had suffered such damages, was clearly entitled to recover them in this action, whether they could or could not have been foreseen, anticipated or estimated at the time of the county court trial. The acceptance of the money awarded in that void proceeding did not estop plaintiff from recovering what was not, as a matter of fact, included in the award. If, therefore, the plaintiff should succeed in establishing the first condition upon which his right of recovery was made to depend, it was erroneous to require him to establish the second. An undue burden was thereby imposed upon him by the instructions of the district court in that respect; but it was an error favorable to the unsuccessful party, and therefore does not require a reversal of the judgment. *Patterson v. Hitchcock*, 3 Colo. 533; *McClelland v. Burns*, 5 Colo. 390; *Leitensdorfer v. King*, 7 Colo. 436. It may be said that, since the burden of this double issue was voluntarily assumed by plaintiff in the district court, he should not be relieved of it in this court. This argument would have some force if plaintiff had failed in obtaining a verdict and judgment, and were here asking for relief on that ground. Under such circumstances he could not, with much grace, be heard to complain that he had been weighed down and defeated by an unnecessary burden of his own choosing. On the other hand, I am not aware that the law imposes any penalty upon the party who has succeeded against such odds; nor does it, in my opinion, devolve the duty upon this court to determine the doubtful question of law involved in such unnecessary issue.

Thus far this opinion was prepared before the majority

opinion was written, and before the other members of the court had agreed as to the decision of the case. My embarrassment is now greatly increased, for the reason that it cannot be truthfully said that I did not sit in the case nor that I concur in the conclusion. Neither do I wish to dissent from the reversal of one of my own judgments at *nisi prius,* without giving reasons therefor, especially after having so reluctantly participated in the review as in this instance. This opinion is therefore filed with a single additional comment: It seems to me that the issue tried in the district court has been misapprehended, as appears from the following language in the majority opinion: "The jury were left, however, to determine whether the damages claimed might have been reasonably foreseen or anticipated by the jury in the condemnation proceedings, and, if not, they were instructed that the appellee (plaintiff) might recover for such damages in this action." I must insist that the vital and controlling question submitted to and determined by the district court jury in this action was: "Did the so-called county court jury in their so-called verdict allow plaintiff any damages on account of injuries to his land by seepage?" The instructions to the jury were to the effect that, if such damages were allowed to the plaintiff by the county court jury, then he, having accepted the same, could not recover again; but that if the county court jury did not make such allowance, then, and then only, could the plaintiff recover in this action upon proof of the other material allegations of his complaint.

*Reversed.*