## Brown v. Bessemer Irrigating Ditch Co.

*District Court of Pueblo County, March 17, 1902.*

J. H. McCorkle and E. E. Hubble for plaintiff; Waldron & Devine for defendant.

WALTER N. DIXON, Judge.

In this action the plaintiff seeks to recover damages for injuries to her land, alleged to have been caused by the discharge upon it of water from the defendant's irrigating canal, which escaped by seepage and percolation. She alleges that the defendant is now, and has been since the 4th day of August, 1894, the owner of a large irrigating canal, commonly known as the "Bessemer Ditch;" that the headgate of said canal is on the south side of the Arkansas river, a distance of about ten miles up said stream from the land of plaintiff; that said ditch extends from said headgate in a general southeasterly direction down the valley through which said river flows to a point many miles below the land of the plaintiff, and is distant about one mile from plaintiff's land at the nearest point of approach; that said ditch is constructed through a loose, gravelly and porous soil; that the surface of the ground lying between said ditch and plaintiff's land has a general slope towards the Arkansas river, and towards the land of the plaintiff; that there is underlying the gravelly surface of the land between defendant's ditch and plaintiff's land at a depth of a few feet, a bed of shale, which has the same slope towards the river as has the surface; that continuously every year since August, 1894, and at all seasons of the year, the defendant has diverted a large volume of water from the

Arkansas river into and through said ditch; that by reason of the loose, gravelly soil through which said ditch is constructed, large volumes of water have escaped continuously since August, 1894, from said ditch, through the bottom and sides thereof, by seepage and percolation, and were carried along the bed of shale above referred to, and broke out and came to the surface in running streams on the land of plaintiff, and on adjacent land, from which said waters were carried through ravines onto plaintiff's lands. The waters thus discharged upon the land of the plaintiff, are alleged to be the cause of the injuries complained of, and damages are claimed in the sum of twelve thousand dollars. The complaint contains no averment whatever of negligence, either in the construction of the ditch, or in its maintenance, or in its operation.

To this complaint defendant has filed an answer containing a general denial and ten special defenses. To the special ·defenses plaintiff has interposed demurrers, of which but two will require any extended consideration, namely, those addressed to the third and fourth special defenses, which plead the statute of limitations. (2 Mills Ann, St. § 2900.) The third special defense alleges that the defendant's canal was constructed and set in operation in the year 1889, and proceeds upon the theory that the statute of limitations begins to run from that date, and that, therefore, the present suit, which was instituted in the year 1900, is barred. The fourth special defense alleges that the discharge of water upon the plaintiff's land and the consequent injury began more than six years prior to the institution of this suit, and proceeds upon the theory that the statute of limitations

in such cases begins to run at the time of the first apparent injury.

To avoid the statute, counsel for plaintiff contended in argument that the defendant's canal constitutes a continuous nuisance, giving rise to a new cause of action on each successive day until it shall be abated, and that, therefore, plaintiff is entitled to recover for all injury inflicted during the six years next preceding the institution of her action. The principal case upon which they rely apparently proceeds upon this theory. I do not think this position is tenable upon any theory of the law.

Whenever, under the sanction of the law and in the exercise of a franchise granted by the sovereign power of the state, a work of any character is constructed, maintained and operated with requisite skill and care, as long as the legal right to maintain and operate it exists, it cannot be a nuisance in the legal sense of the term, nor can the principles of law relating to nuisances be applicable thereto.

If in the exercise of the rights and privileges granted by the provisions of the constitution and statutes of this state relating to irrigation, an irrigating canal be lawfully constructed, although it be built with the utmost skill, and be maintained and operated with the highest degree of care, nevertheless, if through natural causes, water escapes therefrom by seepage or percolation to the injury of adjoining or adjacent lands, undoubtedly the owner of such lands will be entitled to compensation for the injury thus sustained. But his right of action cannot be predicated upon any theory that the canal is a nuisance, for the injury which he has sustained is an injury, the infliction of which is expressly authorized

by the sovereign power. Being a lawful injury, his right of action must arise under the 15th section of the bill of rights, (1 Mills Ann. St. § 288) which declares that private property shall not be taken or damaged for public or private use without just compensation. (Colo. Const. Art. 2, § 15.)

In the case of the Denver City Irrigation & Water Co. v. Middaugh, 12 Colo. 434, it appears that Middaugh, the plaintiff below, was the owner of a certain tract of land, through which the defendant company in the years 1878 and 1879 constructed a canal, extending from the Platte river to its water works; and in February, 1879, it commenced proceedings to condemn a right of way through, across and over certain lands of the plaintiff for the construction of certain canals, lakes and reservoirs. Said proceedings resulted in the condemnation of a portion of the plaintiff's land, for which he was awarded compensation for the land taken, and for damages to that portion of his lands not taken, which said sums were received and accepted by the plaintiff. Subsequently plaintiff brought suit against the defendant for injuries to his remaining lands alleged to have been caused by reason of the fact that the construction of the canal and reservoir of the defendant was so negligently and unskillfully done that the water percolated, penetrated and ran through the banks and bottom thereof, over, under, through and upon the plaintiff's land, by reason whereof the plaintiff was materially damaged.

The important question in the trial below, and the question upon which the case turned in the supreme court, was as to what elements of damage had been foreclosed by the condemnation proceedings.

The trial judge instructed the jury "that the plaintiff could not recover for the damages in fact allowed by the jury in the county court." They were also instructed that the law presumed that all past, present and future damages which the improvement could cause, *so far as the same might have been reasonably foreseen or anticipated,* were included in the award of the jury in the condemnation proceedings. Under these and other instructions the jury were left, however, to determine whether the damages claimed might have been reasonably foreseen or anticipated by the jury in the condemnation proceeding, and, if not, they were instructed that the appellee might recover for such damages in this action as well as for damages arising from unskillful or negligent construction or use of the ditch or reservoir."

Upon this instruction, the judgment for the plaintiff was reversed, the supreme court squarely holding that all claims for damages which flowed as a natural consequence from the operation of the reservoir and canal, and which were caused by percolation and seepage, without any negligence or fault on the part of the defendant company were foreclosed, *although at the time of the condemnation proceedings such damages could not have been reasonably foreseen or anticipated.*

In the opinion it is said, *inter alia:* "The rule in reference to the conclusiveness of condemnation proceedings under statutes similar to our own, which is supported by the better considerations and recognized by the strong weight of judicial authority, requires us to hold that damages resulting from seepage and leakage from the ditch and reservoir, not resulting from negligent or unskillful construc-

tion or use thereof, *ought to have been foreseen* and allowed in the condemnation proceedings, consequently are not recoverable in this action, no matter whether such damages were, as a matter of fact, allowed or not. * * * It follows that appellee should have been limited in his recovery to such injuries as resulted from negligence or want of care in the construction of appellant's ditch and reservoir, or in the subsequent use of the same; and it was error to permit the jury to consider and allow damages for seepage and leakage not resulting from such negligence or want of care."

It is true that the court was here considering the effect of a condemnation proceeding as *res adjudicata*, but the form of the proceeding could not affect the character or nature of the plaintiff's right to compensation. That right was based on the fact that his property had been damaged, and would be precisely the same, and be controlled by the same principles, whether asserted in a condemnation proceeding or in a common law action. In deciding that claims for damages of the character under consideration could and should be litigated in a condemnation proceeding, the court virtually decided that the right to compensation for such damages arises, not upon any theory of nuisance, but under the section of the bill of rights above referred to.

The result of the decision, and the reasoning in support thereof, is, therefore, that whenever an irrigation company constructs a canal with requisite skill and due care, the damage for which it is required to make compensation under the Bill of Rights cannot be split up into successive injuries, occurring at different times, for which different and

successive causes of action may be maintained; but constitutes an indivisible unit—one original damage, which in contemplation of law is all inflicted at one time and by one act, namely, the construction and setting in operation of the canal. It further results from the decision that all injury to adjoining or adjacent property which is a probable and natural consequence of the operation of such a canal, without negligence on the part of the owner, is a part of that indivisible unit—of that original damage guarded by the Bill of Rights, and the right of action, therefore, in contemplation of law, arises at the time that the canal is set in operation, no matter how long a period may elapse between that time and the manifestation of such injury.

It is further expressly held that the injury which is occasioned to adjoining or adjacent property by the percolation or seepage of water through natural causes and without any fault or negligence on the part of the owner of such a canal is a probable and natural cousequence of its operation, and is, therefore, a part of the original damage guarded by the Bill of Rights.

In my judgment, it logically—even necessarily—follows that as to damages of the character under consideration, the statute of limitations begins to run from the time when the canal is set in operation.

Our statute, in terms, begins to run from the time the cause of action accrues. When the cause of action accrues is a judicial question, and to determine it in any particular case is to settle a general rule of law for a class of cases, which must be founded upon reason and justice.

In framing and applying such rules of law, it is

the duty of the courts to consider the interests which are liable to be affected, and if those interests are of a public or a *quasi* public character, or if they concern the welfare of the community in general, rules must be so framed and applied as to afford them every reasonable protection.

Undoubtedly when so framed and applied, isolated instances of hardship and apparent injustice to individuals will arise; but when the interests of the individual come in conflict with "the good of the many," reason and justice require that the former shall be sacrificed. It is the inevitable consequence of the reign of law; it is the price which each of us may at any time be called upon to pay for the privilege of living in society governed by general laws.

The wonderful development of the agricultural interests of this state in the past few years has been due entirely to the establishment and development of our system of irrigation, under the liberal provisions of the constitution and of the statutes relating thereto. In irrigation enterprises, hundreds of thousands of dollars have been invested, and these investments in turn have created millions of values, not in the hands of the investors, but in the hands of the people. The maintenance and further extension of agricultural interests must depend upon the maintenance and further extension of the irrigation system. To announce that an irrigation company, engaged in the lawful operation of its canal, must be perpetually an insurer against all damages caused by percolation or seepage from natural causes, without any fault or negligence on its part, is to announce a rule which will prove a menace to the solvency of every such institution now in existence, and which

will in all probability prevent any investment of consequence in such enterprises in the future. Men of affairs do not leap in the dark. Enterprises of such a character are never entered into until the cost has been calculated in advance, and a margin of profit figured out. If such a rule prevails, this cannot be done; and I repeat, men of judgment will not invest their money in irrigation enterprises, when in addition to the cost so far as the same is subject to human calculation, there stands before them, however much skill and care they may exercise, a perpetual liability for damages which cannot be foreseen or anticipated, and which, therefore, cannot be guarded against.

Moreover, in the arid regions of the west, as a general rule lands have no appreciable value without water. It is the construction of irrigating canals which has created their value for agricultural purposes, and has made possible the building of towns and villages which form the centers of agricultural communities. And as a general rule, lands which would be liable to injury by seepage and percolation from natural causes, derive their value from their proximity to irrigating canals, or to towns and villages which have been the result of the construction of canals. It would be in violation of every principle of justice if long years after the construction of a canal its owner should be mulcted in damages for the destruction of or injury to values which itself had created, or to the creation of which it had contributed.

Sound public policy demands that a limitation be placed upon the liability of irrigation companies in respect to such injuries, and that a point of time be

fixed beyond which they can be held responsible only for their acts of negligence.

This reasoning is sanctioned by the courts. In Van Schoick v. Canal Co., 20 N. J. Law, 249, a case parallel in principle to Middaugh case, it is said: "I believe that the legislature intended that the award of the commissioners, or, in case that should be set aside, the verdict of the jury, followed by the judgment of the court, should be final and conclusive between the parties, both as to the value of the land and the damages sustained. And I do not believe that they ever designed that, after such proceedings, the company could be subjected, from time to time, during the whole period of its existence, to an action at law by every landholder on the line of the canal, to recover damages for some injury which he may allege was not foreseen, and for which consequently he was not compensated. Such a construction would have been a most effectual bar to the enterprise of erecting a canal; for no man would have embarked his capital in a work the cost of which could never be ascertained till the charter expired. It may be said that it operates injuriously to an owner who sustains damages from a cause which neither the commissioners nor the jury by the utmost human sagacity could see or provide against; but the defendants might urge the same objections, that they were liable to be assessed for anticipated injuries which may never occur."

This case is quoted at length by our supreme court in the Middaugh case, and Mr. Justice Hayt says: "It is said that the rule requiring injuries resulting from seepage and leakage to be anticipated and damages for the same allowed in the condemna-

tion proceedings will work hardship in some cases; but, while this is doubtless true, it is believed that mischief is less likely to result under such a rule than from any decision under which the owner of the improvement might be subjected to repeated suits for injuries, which the owner of the land might think were occasioned by seepage which was unforeseen at the time of the condemnation proceedings; and I am of the opinion that it is much wiser in the case at bar and similar cases to say that such injuries should be included in the original assessment."

That the reasoning is applicable to the determination of the question of limitations is shown by the case of Heard v. The Proprietors of the Middlesex Canal, 46 Mass. 81. The canal company had been authorized by the legislature to erect a dam across the Concord river. The act granting the franchise provided that any person who should be damaged by the company should have compensation therefor by application to the court within a year from *the time the damage was done.* It was held that the statute began to run when the dam was completed and put in operation, and not from the time when damage was first sustained. In the course of the opinion the court says:

"But we think the same conclusion follows from considering the nature of such an enterprise, and the policy and purposes of the act establishing it. Whether a public improvement will be beneficial, depends upon a comparison of the utility with the cost. Compensation for land taken constitutes an essential part of the cost; and if it is to pass over highly improved and very valuable lands, as through a city or thickly settled village, it is a good reason why the

enterprise should not be undertaken; but if over
lands of little value, it would be otherwise. Now land
may be of little value, when the work is determined
on and laid out, and if the entire cost is then
assessed, it may be a small sum. But if the damage
is to be assessed, from time to time, in all future
time, after lands have risen in value, from the prog-
ress of improvement, the cost of such a work could
never be known or estimated. Such a continuing
and growing liability, especially when, as in the pres-
ent case, the liability for damages is made a charge
upon every stockholder in the company, would oper-
ate as a discouragement, if not an absolute bar, to
every such undertaking. But if the entire damage
for land can be not only estimated and ascertained,
but paid, whilst the work is in progress, whilst the
original proprietors and managers have the superin-
tendence and conduct of its affairs, the costs of land
will be included and liquidated, with the other costs
of the work, and the whole made up and included in
the capital stock of the company.

The court are therefore of the opinion, that the
damage, contemplated by the act, is not the remote
and consequential damage, which may arise from the
future operation of the work, but the immediate and
direct damage arising from the erection of such a
work. It is erected for public use, sanctioned by
law, permanent in its operation on the complainant's
property, and perpetual in its duration; it either
passes over the complainant's land, or it is so situ-
ated as to affect it and impair its value. The dam-
age done, then, is the immediate damage done to
the complainant's estate by changing its permanent
condition and impairing its present value, and this is

done by the erection of the dam; and of course the term of one year, within which the complaint must be made, is to be computed from that time. On any other supposition, this would be practically no limitation. If one year should be computed from the time of the complainant's receiving damages, by the loss of his grass, this is a danger perpetually recurring, and complaints would be brought from year to year, in all future time. But the construction adopted by the court does, in our opinion, secure the just claims of the land holders, affords protection to the promoters of a useful public enterprise, and is consistent alike with the provisions and the policy of the act of incorporation."

The reasoning of this case is directly applicable to the case at bar, for the "damage" mentioned in the charter of the Middlesex Company means precisely the same thing as the damage provided for in our Bill of Rights, and the *Middaugh* case decides that damages of the character under consideration constitute a part of the latter.

From the foregoing considerations, it would follow that if injury through percolation or seepage from natural causes, and without negligence, should not be anticipated or become apparent until after the expiration of six years from the time an irrigating canal is set in operation, the person injured would lose his right of action, and this I believe to be the law.

In the case of Davis v. The City of New Bedford, 133 Mass. 549, the legigislature had granted to the city the right to construct a reservoir and dam for the storage of water, and provided that the owner of any land taken by the city for the purpose

of the act, or other persons who should sustain damages by the construction of any dam or reservoir, might apply by petition for the assessment of his damages at any time within the three years from the taking of such land or *sustaning of damges aforesaid;* that whenver any damages were sustained as above set forth, the city might in case of neglect of the persons damaged to institute proceedings for twelve months, commence such proceedings, which should be determined as if commenced by such person.   It was held that a petition for damages could not be maintained after the expiration of three years from the construction of the dam and reservoir by a person whose land was injured by water percolating through his land from the reservoir, although such percolation did not take place until after the expiration of the three years.

In the opinion it is said: "There have been several occasions when it has been necessary to construe acts where, either for public purposes or to aid in enterprises of a public and general character, the construction and permanent maintenance of dams have been authorized.   These acts have contained provisions for the protection of those whose lands or other property is taken, or who sustain damages by such structures, but in nearly all it has been provided that the remedy must be pursued within a comparatively short limitation of time.  It has been held that notwithstanding the difficulty of determining within a brief period what is the damage sustained by land or property not taken, it must still be done within the time limited."   Heard vs. Middlesex Canal, 5 Metcalf 81; Call vs. County Commissioners 2 Gray, 232; Ipswich Mills v. County Commissioners,

108 Mass. 363."

"The reasons why this should be so are certainly as strong in the present case as in those cited. Unless there were a single assessment within a definite period the cost of such a work could not be ascertained and provided for, as there might be a continued recurrence of claims of indefinite extent for an indefinite period. Again, that which the respondent should pay is the damage which it has occasioned by diminishing the value of the land, *as it existed at the the time of the construction, and not as it may exist years afterwards, when increased population and other reasons may have materially added to such value.* * * * The petitioner contends that it was only many years after the construction of the dam that he sustained actual damage; that previously thereto it was speculative merely. The injury likely to arise to land from the flowing thereof is more readily seen and determined, undoubtedly, than that which may proceed from percolation or underground currents of water, when it is collected and stored in a reservoir in the vicinity of a tract of land. Yet, if by exposure to danger therefrom the land is diminished in value, such loss or diminution would afford a fair measure of the owner's damage. The time within which the petitioner was entitled to make his application might also well have appeared to the legislature as sufficiently long to determine by the test of actual experiment what injury was likely to be done, or what might be reasonably apprehended from any diminished capacity of the land for cultivation or improvement, and thus what was the depreciation in the value of the land."

The plaintiff relies upon the case of The Con-

solidated Home Supply Ditch & Reservoir Company
vs. Hamlin, 6 Colo. App., 341. In that case Hamlin,
the plaintiff below, was the owner of a tract of land
through which the defendant company had con-
structed two ditches, the first in 1882, and the second
in 1883 and 1884. The plaintiff's lands were injured
by water through seepage and percolation. The
evidence showed that the seepage commenced in
1885, but there was only a comparatively small
amount of land injured or destroyed until 1889. Af-
ter that date the crops were destroyed. The action
was commenced in 1893. The defendant pleaded the
statute of limitations, but the court below, proceed-
ing upon the theory that the ditch was a continuous
nuisance, held that the plaintiff was entitled to re-
cover for all the injury that had been inflicted during
the six years preceding the institution of the action.
The plaintiff recovered judgment, and upon appeal
that judgment was affirmed. In the original opinion
handed down by the court there is nothing whatever
in conflict with the views above expressed. On page
348 it is said: "This case was put fairly upon negli-
gence in constructing the ditch and its subsequent
operation." If this was true, if the ditch was im-
properly constructed at the start, and if the fault in
its construction was never repaired, then it could
properly be considered as a continuous nuisance, giv-
ing rise to a new cause of action from day to day, so
that the plaintiff would be entitled to recover as held
by the court below; because injuries occasioned
through faulty construction could not be considered
as a natural consequence flowing from the operation
of a ditch constructed as required by law. On re-
hearing a second opinion was handed down, which in

several vital points is entirely in conflict with the original opinion. It is utterly impossible to harmonize the two, and since the original opinion was not withdrawn, I am wholly unable to determine upon what principle the judgment in that case was finally affirmed.

But if the views above expressed be in conflict with the Hamlin case, the fact that that decision was rendered subsequently to the decision in the Middaugh case cannot affect the conclusion. The decisions of the court of appeals always have been, and always will be, received by the bench and bar with the respect and consideration which the dignity of the court and the learning of its members demand; but they are not binding upon *nisi prius* courts except in the particular cases in which they are rendered. The reason for this seems to me to be obvious. That court has not been, and under the constitution of this state can never be, vested with exclusive jurisdiction of any branch of the law. The legislature has undertaken to make its judgments in certain cases final. I do not believe that its action can be constitutionally effective; but however that may be, one thing is absolutely certain—that court has never yet announced any principle or proposition of law which may not to-morrow be overruled by the supreme court. Hence it follows that what it announces as law is not the settled law, but merely what it thinks or believes to be the law. On the other hand, except upon federal questions, whenever the supreme court speaks, it speaks the law. No matter how much its utterances may be condemned by the members of the profession, or conflict with the weight of judicial authority, it is the law, and it is the

law because it cannot be overruled by any other tribunal. It is the law only that binds, and hence the decisions of the supreme court, and those decisions only, are binding upon inferior courts.

Of course no *nisi prius* court would be justified in setting up its opinion upon a debatable question of law against a decision of the court of appeals. On the other hand, a *nisi prius* court is certainly not justified in following a decision of the court of appeals when, in its judgment, that decision is in conflict with a prior decision of the supreme court.

I have not a shadow of doubt in my mind that the question here involved is controlled by the decision in the Middaugh case, and I am compelled to hold that after the expiration of six years from the date that an irrigating canal is set in operation no action can be maintained for an injury which is the natural result of the operation of such canal, there being no fault or negligence in its construction, maintainance or operation.

It follows that the demurrer to the third special defense must be overruled.

But if I should be mistaken in this conclusion, if an irrigating canal, such as is described in the complaint in this action, can be regarded in law as a nuisance, then it is not a continuous nuisance, but one of a permanent character, and for injuries arising therefrom there can be but one action, in which must be assessed all damages, past and prospective. This is held both in the Middaugh case and in the opinion on rehearing in the Hamlin case.

A cause of action certainly accrues when the first injury is inflicted, and if this be the correct theory to proceed upon, I see no escape from the con-

clusion that the statute of limitations begins to run from that time.

The demurrer to the fourth special defense will, therefore, be overruled.

The demurrers to the remaining special defenses will be sustained.